UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------- X

GENE ADAMOWICZ, MARY BEBBER,     :
LISA BURGER, PATRICIA CHAN,     :
KATHLEEN CHRISTY, ALISON     :
CORLEY-DUBOSE, KAREN CRONIN,     :
VERONICA DE LA ROSA, DEBRA DIAZ-     :
CHAMBLESS, TERESA DUDA,     :
CHRISTINA DUNNE, HEATHER LAU,     :
JULIE LIFF, DEBRA LOMONACO,     :
BRITTANY LUBERDA, PATRICIA     :
MACDONALD, ASHLEY MACKEY,     :
HEATHER POLIZZI, DANIEL     :
RAWCLIFFE, ADRIANA SCALICI,     :
OLIVIA STEIN, CATHERINE STEVENS,     :
SHARON VARUGHESE, MEGAN VIRGA,     :
and MELANIE WEISS,     :
    :
          Plaintiffs,     :
    :
      -against-     :
    :
NORTHWELL HEALTH SYSTEMS,     :
    :
          Defendant.     :
    :

-------------------------------------------------- X

Case No. 2:23-cv-01277 (OEM-LGD)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Jacqueline Phipps Polito
jpolito@littler.com
Erin M. Train
etrain@littler.com
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Telephone: 585.203.3400
Facsimile: 585.203.3414

Attorneys for Defendant
NORTHWELL HEALTH, INC.

# TABLE OF CONTENTS

**PAGE**

I. PRELIMINARY STATEMENT ................................................................................. 1

II. RELEVANT FACTUAL AND PROCEDURAL HISTORY .............................................. 2

    A. The COVID Vaccine Mandate For Healthcare Workers ...................................... 2

    B. Plaintiffs' Allegations ................................................................................. 3

    C. Plaintiffs' Failure to Exhaust Administrative Remedies ...................................... 4

    D. Varughese's Settlement and Release ................................................................ 5

III. ARGUMENT ...................................................................................................... 5

    A. Rule 12(b)(6) Motion Standard ..................................................................... 5

    B. Plaintiffs' Claims Must Be Dismissed For Failure to Exhaust Administrative Remedies . 6

        1. Plaintiffs' Conclusory Assertions Do Not Relieve Their Obligation to Exhaust Administrative Remedies ................................................................................. 7

            a. Plaintiffs' Vague Allegations Do Not Entitle Them to Equitable Relief For Failing to Exhaust Their Administrative Remedies. ...................................... 8

            b. Plaintiffs' Do Not Argue for Equitable Relief on Their Second Cause of Action ..... 12

        2. Even Taking the EEOC Documents Into Account, Plaintiffs Are Not Relieved of Administrative Exhaustion Prerequisite .......................................... 12

            a. Plaintiffs' Failure to File Charges ................................................................. 13

            b. Plaintiff Adamowicz's and Dunne's Charges Were Untimely Filed on its Face ....... 13

            c. Plaintiffs Burger, Corley-Dubose, Cronin, Diaz-Chambless, and Stevens' Claims Must Be Dismissed Because They Were Not Pending Before the EEOC for 180 Days ...................................................................................................... 14

            d. Plaintiffs Adamowicz, Diaz-Chambless, and Corley-Dubose Did Not File Suit Within 90 Days ...................................................................................................... 15

            e. Plaintiffs Adamowicz, Chan, Cronin, and Weiss Receipt of Right-To-Sue Notices After Filing Suit Precludes Their Claims ................................................. 16

    C. Plaintiffs Fail to State a Plausible Claim for Religious Discrimination in Violation of Title VII ...................................................................................................... 17

        1. Plaintiffs Fail to Plausibly Plead a *Prima Facie* Claim ................................. 17

        2. Plaintiffs' Request to be Exempted from Northwell's Vaccination Requirement Would, if Granted, Have Constituted an Undue Hardship to Northwell ..................... 19

    D. Plaintiffs Fail to State a Plausible Claim for Violation of GINA ....................... 23

    E. Varughese's Claims Are Barred By Her Release ............................................ 26

IV. CONCLUSION ................................................................................................... 27

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Algarin v. NYC Health + Hosps. Corp.*,
No. 1:22-cv-8340 (JLR), 2023 WL 4157164 (S.D.N.Y. June 23, 2023)............................21, 23

*Anderson v. United Airlines*,
577 F. Supp. 3d 1324 (M.D. Fla. 2021) ..............................................................................25

*Ansonia Bd. of Educ. v. Philbrook*,
479 U.S. 60 (1986) ...............................................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................5, 6

*Baker v. Home Depot*,
445 F.3d 541 (2d Cir. 2006)................................................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................5, 6

*Billings v. New York State Department of Corrections & Community Supervision*,
2021 WL 4150925 (S.D.N.Y. Sept. 10, 2021).....................................................................19

*Brown v. Coach Stores, Inc.*,
163 F.3d 706 (2d Cir. 1998)................................................................................................14

*Buttry v. General Signal Corp.*,
68 F.3d 1488 (2d Cir. 1995).................................................................................................8

*Cagle v. Weill Cornell Medicine*,
No. 22-cv-6951 (LJL), 2023 WL 4296119 (S.D.N.Y. June 30, 2023)................................21

*Carasco v. New York City Off-Track Betting Corp.*,
858 F. Supp. 28 (S.D.N.Y. 1994), *aff'd,* 50 F.3d 3 (2d Cir. 1995)........................................10

*Conaway v. Control Data Corp.*,
955 F.2d 358 (5th Cir. 1992) ..............................................................................................11

*Corrales v. Montefiore Med. Ctr.*,
No. 22-CV-3912 (LAP), 2023 WL 2711415 (S.D.N.Y. Mar. 30, 2023)...............................22

*Cortez v. E.E.O.C*,
585 F. Supp. 2d 1273 (D.N.M. 2007) ................................................................................14

*Cosme v. Henderson*,
   287 F.3d 152 (2d Cir. 2002)..................................................................................20

*D'Cunha v. Northwell Health Sys.*,
   No. 1:22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023),
   *appeal filed* 2023 WL 2266520 ............................................................18, 19, 22

*Dechberry v. New York City Fire Dep't*,
   124 F. Supp. 3d 131 (E.D.N.Y. 2015) ....................................................................26

*Dennison v. Bon Secours Charity Health System Medical Group, P.C.*,
   No. 22-CV-2929 (CS), 2023 WL 3467143 (S.D.N.Y. May 15, 2023).....................19, 22, 23

*Dillman v. Combustion Eng'g, Inc.*,
   784 F.2d 57 (2d Cir. 1986).......................................................................................8

*Doe v. Hochul*,
   No. 21-CV-1078, 2022 WL 446332 (N.D.N.Y. Feb. 14, 2022) ...........................16

*Does 1-2 v. Hochul*,
   632 F.Supp.3d 120 (E.D.N.Y. 2022) ....................................................................21

*Edner v. NYCTA-MTA*,
   134 F. Supp. 3d 657 (E.D.N.Y. 2015) ..................................................................10

*Francis v. City of N.Y.*,
   235 F.3d 763 (2d Cir. 2000).....................................................................................6

*Gaia House Mezz LLC v. State Street Bank & Trust Co.*,
   720 F.3d 84 (2d Cir. 2013).....................................................................................14

*Gibb v. Tapestry, Inc.*,
   No. 18-CV-6888, 2018 WL 6329403 (S.D.N.Y. Dec. 3, 2018) ...........................14

*Gross v. N. Dakota Univ. Sys.*,
   No. 3:21-cv-206, 2022 WL 2612121 (D. N.D. Jan. 10, 2022) *report and
   recommendation adopted*, 2022 WL 2612120 (Feb. 9, 2022).................................25

*Guan v. N.Y.S. Dep't of Envtl. Conservation*,
   16-CV-2180 (JMA) (GRB), 2019 WL 1284260 (E.D.N.Y. Mar. 20, 2019) ...........6

*Hamilton v. City of New York*,
   563 F. Supp. 3d 42 (E.D.N.Y. 2021) ....................................................................21

PAGE(S)

*Hardaway v. Hartford Pub. Works Dep't*,
   879 F.3d 486 (2d Cir. 2018)..........................................................................6

*Harden v. Honeywell Int'l*,
   No. 1:23-cv-00176-JPB, 2023 WL 3310172 (N.D. Ga. May 8, 2023)...................25

*Hodges v. Attorney General of U.S.*,
   976 F. Supp. 2d 480 (S.D.N.Y. 2013).............................................................6

*Holmes v. NBC/GE*,
   914 F. Supp. 1040 (S.D.N.Y. 1996)...............................................................15

*Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*,
   620 F.3d 137 (2d Cir. 2010)..........................................................................6

*Johnson v. Xylem, Inc.*,
   613 F.Supp.3d 677 (W.D.N.Y. 2020) .............................................................16

*Kane v. de Basio*,
   623 F. Supp. 3d 339 (S.D.N.Y. 2022).............................................................18

*Klimovitsky v. JG Innovative Industries, Inc.*,
   No. 21-CV-755 (MKB), 2021 WL 5712120 (E.D.N.Y. Dec. 1, 2021) ...................16

*LaBarbera v. NYU Winthrop Hosp.*,
   527 F.Supp.3d 275 (E.D.N.Y. 2021) .............................................................18

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
   274 F.3d 683 (2d Cir. 2001)..........................................................................6

*Lewis v. NYC Transit Auth.*,
   12 F. Supp. 3d 418 (E.D.N.Y. 2014) .............................................................12

*Loeb v. Cnty. of Suffolk*,
   22-CV-6410 (HG), 2023 WL 4163117 (E.D.N.Y. June 23, 2023).......................26

*Lowman v. NVI LLC*,
   821 F. App'x 29 (2d Cir. 2020) .........................................................17, 18, 20

*Marte v. Montefiore Med. Ctr.*,
   No. 22-CV-03491-CM, 2022 WL 7059182 (S.D.N.Y. Oct. 12, 2022) ..................22

*McPherson v. New York City Dept. of Educ*,
   457 F.3d 211 (2d Cir. 2006).....................................................................7, 13

*Med. Prof'ls for Informed Consent v. Bassett*,
  2023 N.Y. Slip. Op. 62807(U), 2023 WL 2344242 (N.Y. App. Div. 2023) ...........................23

*Moore v. City of N.Y.*,
  No. 15 Civ. 4578 (KPF), 2016 WL 3963120 (S.D.N.Y. July 21, 2016) ..................10, 11, 15

*Morton v. ICI Acrylics, Inc.*,
  69 F. Supp. 2d 1038 (W.D. Tenn. 1999).................................................................11

*Muhammad v. NYC Transit Auth.*,
  450 F. Supp. 2d 198 (E.D.N.Y. 2006) ....................................................................5

*Nechis v. Oxford Health Plans, Inc.*,
  421 F.3d 96 (2d. Cir. 2005).................................................................................26

*Netzer v. Continuity Graphic Assoc.*,
  963 F. Supp. 1308 (S.D.N.Y. 1997).....................................................................8, 9

*Pampillonia v. RJR Nabisco, Inc.*,
  138 F.3d 459 (2d Cir.1998)................................................................................26

*Perez v. Harbor Freight Tools*,
  15-cv-05983 ADS SIL, 2016 WL 4734635 (E.D.N.Y. Sept. 9, 2016), *aff'd*
  698 F. App'x 627 (2d Cir. 2017) .........................................................................10

*Ragone v. Atl. Video*,
  595 F.3d 115 (2d Cir. 2010)..............................................................................6, 7

*Rasmussen v. Sigma Corp. of America*,
  27 F. Supp. 2d 388 (E.D.N.Y. 1998) ...................................................................15

*Reyes v. Westchester Cty. Health Care Corp.*,
  2021 WL 4944285 (2d Cir. Oct. 25, 2021)............................................................18

*Riley v. New York City Health & Hosps. Corp.*,
  No. 22-cv-2736, 2022 WL 2118073 (S.D.N.Y. Feb. 17, 2023) ...............................22

*Rolon v. Henneman*,
  517 F.3d 140 (2d Cir. 2008)...............................................................................6

*Rosas v. Berry Plastics*,
  649 F. App'x 3 (2d Cir. 2016) ...........................................................................15

*Schiappa v. Brookhaven Science Associates, LLC*,
  403 F. Supp. 2d 230 (E.D.N.Y. 2005) .................................................................12

*Sealey v. Affiliated Computer Servs., Inc.*,
    2012 WL 729217 (W.D.N.Y. Mar. 6, 2012), *aff'd* 522 F. App'x 35 (2d Cir.
    2013) ...................................................................................................................18

*Shahid-Ikhlas v. The New York & Presbyterian Hosp., Inc.*,
    No. 1:22-cv-10643 (GHW) (SDA), 2023 WL 3628151 (S.D.N.Y. May 5,
    2023) ...................................................................................................................22

*Sherlock v. Montefiore Med. Ctr.*,
    84 F.3d 522 (2d Cir. 1996)....................................................................................7

*Sira v. Morton*,
    380 F.3d 57 (2d Cir. 2004)....................................................................................5

*Syeed v. Bloomberg, L.P.*,
    568 F.Supp.3d 314 (S.D.N.Y. 2021)...................................................................16

*Tavoulareas v. Bell*,
    292 A.D.2d 256 (1st Dept. 2002).........................................................................26

*Tiberio v. Allergy Asthma Immunology of Rochester*,
    664 F.3d 35 (2d Cir. 2011)...................................................................................15

*Tromp v. City of New York*,
    465 F. App'x 50 (2d Cir. 2012) ...........................................................................26

*Warshun v. N.Y. Cmty. Bancorp, Inc.*,
    957 F. Supp. 2d 259 (E.D.N.Y. 2013) .................................................................12

*We The Patriots USA, Inc. v. Hochul*,
    17 F.4th 368 (2d Cir. 2021) (*We The Patriots II*) ....................................3, 17, 18, 20

*Weisbecker v. Sayville Union Free Sch. Dist.*,
    890 F.Supp.2d 215 (E.D.N.Y. 2012) ...................................................................17

*Welch v. Bio-Reference Labs., Inc.*,
    No. 1:19-CV-846, 2019 WL 4805533 (N.D.N.Y. Oct. 1, 2019) *report and
    recommendation adopted*, 2019 WL 6134359 (Nov. 19, 2019)............................24

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003).....................................................................................10

PAGE(S)

**Statutes**

42 U.S.C. § 2000e-2(a)(1)..........................................................................17

42 U.S.C. § 2000e-5(f)(1)............................................................................7

42 U.S.C. § 2000e(j).................................................................................17

42 U.S.C. § 2000ff-1(a).............................................................................24

42 U.S.C. § 2000ff-1(a)(1), (b)...................................................................24

42 U.S.C. § 2000ff(4)(A)............................................................................24

42 U.S.C. § 2000Off(7)..............................................................................24

N.Y. Pub. Health L. § 2806(1)(a) (2021)........................................................2

**Other Authorities**

10 N.Y.C.R.R. § 2.61 (a)(2), (c).............................................................2, 20

10 N.Y.C.R.R. § 2.61 (a)(2), (c), (d)............................................................2

10 N.Y.C.R.R. § 2.61 (c)...........................................................................20

# I.    PRELIMINARY STATEMENT

Defendant Northwell Health, Inc. (incorrectly sued as Northwell Health Systems) ("Northwell")[1] submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' Complaint (Dkt. 1) ("Complaint" or "Compl.") in its entirety as Plaintiffs' two claims – under Title VII and GINA – fail.

*First*, Plaintiffs admittedly did not exhaust their administrative remedies before filing suit. This is fatal to their claims.  Plaintiffs' boilerplate and conclusory allegations attempting to blame the Employment Opportunity Commission ("EEOC") for their failure to exhaust, fall far short of the demanding standard required to excuse this requirement.

*Second*, even if they appropriately filed before the EEOC, Plaintiffs' Complaint does not state a plausible claim for religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") or for discrimination under the Genetic Information Nondiscrimination Act ("GINA"). Plaintiffs' claims under Title VII assert that Northwell could have accommodated Plaintiffs by permitting them to follow mitigation protocols of weekly testing and masking without enduring an undue hardship.  Yet, numerous courts in the Second Circuit (including the Second Circuit itself) have held that the exact type of religious "accommodation" Plaintiffs sought—*i.e.*, to continue to work unvaccinated while following other "mitigation protocols" —would cause an undue hardship as a matter of law, because granting that "accommodation" would require Northwell to violate applicable state law.  Plaintiffs' GINA claim also fails.  Requiring a healthcare worker to be vaccinated against COVID-19 does not implicate "genetic information" as that term

---

[1] Northwell is a full-service health system comprised of 22 hospitals, a vast network of other services, including approximately 800 outpatient facilities, plus physician groups, medical and nursing schools. Many, if not all, Plaintiffs were employed not by Northwell, but by the sites or facilities at which they worked within the Northwell system. *See* Declaration of Andrew Goldberg ("Goldberg Decl."), ¶4. *See also* Dkt. 1-2 through 1-26, ¶3.

is defined by GINA. As such, for these reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.[2]

## II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY[3]

### A.    The COVID Vaccine Mandate For Healthcare Workers

On August 26, 2021, the New York State Department of Health issued an emergency rule, codified at N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) applicable to health care institutions (hereinafter "DOH Mandate"). The DOH Mandate states that covered healthcare entities must "continuously require" employees to be fully vaccinated against COVID-19 if they "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61 (a)(2), (c). The law contains a limited exception only for employees for whom a "COVID-19 vaccine [would be] detrimental to" their health "based upon a pre-existing health condition." *Id.* § 2.61(d)(1).

The promulgation of the DOH Mandate required that Northwell as a healthcare entity, comply, including by requiring and maintaining proof of employee vaccination or medical exemption if they fell within the scope of the regulation. *See* 10 N.Y.C.R.R. § 2.61 (a)(2), (c), (d). If Northwell did not comply with the DOH Mandate, it could be enjoined from continuing to permit employees to work absent proof of vaccination or exemption and could subject Northwell to civil fines, penalties, and loss of licensure. *See, e.g.* N.Y. Pub. Health L. § 2806(1)(a) (2021) ("A hospital operating certificate may be revoked, suspended, limited or annulled … [if] the hospital has failed to comply with the provisions of [Article 28] or rules and regulations promulgated

---

[2] In addition, Northwell seeks dismissal of Plaintiff Varughese's claims as they were previously released pursuant to an executed settlement agreement.
[3] Solely for purposes of this Motion, Northwell assumes the facts pled in the Complaint are true.

thereunder"). To comply with the DOH Mandate, Northwell required employees to become vaccinated beginning in August 2021. *See* Compl. ¶¶33, 36, 51.

The Second Circuit confirmed that under the DOH Mandate employees are not permitted to seek a "blanket religious exemption" from the DOH Mandate while remaining "covered personnel" and within the scope of the DOH Mandate. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021) (*We The Patriots II*). An accommodation is possible only by employing a worker "in a manner that removes them from the Rule's definition of 'personnel'." *Id.* No other religious accommodation would permit a healthcare worker – such as Plaintiffs – to continue working as covered personnel while unvaccinated. *See id.*

## B. Plaintiffs' Allegations

Plaintiffs allege they are all healthcare workers who worked at various sites or facilities within the Northwell system. *See* Dkts. 1-2 through 1-26 at ¶3 of each. Plaintiffs allege that after Northwell began requiring its personnel to become vaccinated against COVID-19 in August 2021 (Compl. ¶¶33, 36), it created a means for employees to request a religious exemption from vaccination, but not a religious accommodation. *Id.* ¶¶37-38. Nonetheless, Plaintiffs' requests for religious accommodation from the vaccine requirement. *Id.* ¶¶47-18, 54, 60-61, 63; Dkts. 1-2 through 1-21 at ¶10 of each; Dkt. 1-22 at ¶14. Plaintiffs allege Northwell could have, and should have, accommodated them by continuing the weekly testing, masking, and social distancing "mitigation protocols" that were in place before the vaccine became available. Compl. ¶¶50, 56-59, 76-77, 89. Northwell informed Plaintiffs their religious accommodation requests (*i.e.* requests for religious exemptions) were not available, and were terminated from their employment. Compl. ¶55. Plaintiffs concede that Northwell relied on the DOH Mandate and they admit the Mandate "made it unlawful for Northwell to exempt its employees from being vaccinated against COVID-19 on the basis of their religion." Compl. ¶36.

## C. Plaintiffs' Failure to Exhaust Administrative Remedies

In sworn declarations, executed under penalty of perjury, Plaintiffs admit they did not exhaust their administrative remedies before filing suit, listing various excuses for their failure. Nearly all the Plaintiffs' declarations contain the same "boilerplate" conclusory allegations with respect to their interactions with the EEOC. Nearly all Plaintiffs allege in varying general terms that he or she contacted the EEOC in September or October of 2021; the EEOC did not communicate with the specific Plaintiff; the EEOC never permitted the specific Plaintiff to complete an Intake Interview or file a Charge; and as a result, the specific Plaintiff was not able to file a Charge, despite believing he or she had, because the EEOC "lulled" the specific Plaintiff into that belief.[4]

Some of the Plaintiffs' declarations contain similar but more specific allegations, including that the EEOC delayed or refused to schedule an Intake Interview (*see* Dkt. 1-5, ¶¶14-27 (Chan); Dkt. 1-13, ¶¶14-28 (Lau)); advised Plaintiff to file with a state agency (*see* Dkt. 1-26, ¶¶14-26 (Weiss)); advised Plaintiffs not to file a Charge (*see* Dkt. 1-18, ¶¶14-19 (Mackey); Dkt. 1-21, ¶¶14-26 (Scalici)); or provide a different initial contact date with the EEOC (*see* Dkt. 1-19, ¶¶14-27 (Polizzi)).

In addition, one Plaintiff alleges that she *was* able to file a Charge, but then provides contradictory statements about whether or not she received her Notice-of-Right to sue before the Complaint was filed. *See* Dkt. 1-15, ¶¶14, 17, 18 (LoMonaco).[5] Finally, two Plaintiffs'

---

[4] *See* Dkt. 1-2, ¶¶ 14-26 (Adamowicz); Dkt. 1-3, ¶¶ 14-27 (Bebber); Dkt. 1-6, ¶¶ 14-27 (Christy); Dkt. 1-8, ¶¶ 14-26 (Cronin); Dkt. 1-9, ¶¶ 14-26 (De La Rosa); Dkt. 1-10, ¶¶ 14-26 (Diaz Chambless); Dkt. 1-11, ¶¶ 14-27 (Duda); Dkt. 1-12, ¶¶ 14-26 (Dunne); Dkt. 1-14, ¶¶ 14-26 (Liff); Dkt. 1-16, ¶¶ 14-27 (Luberda); Dkt. 1-17, ¶¶ 14-26 (MacDonald); Dkt. 1-20, ¶¶ 14-26 (Rawcliffe); Dkt. 1-22, ¶¶ 18-30 (Stein); Dkt. 1-24, ¶¶ 14-26 (Varughese); and Dkt. 1-25, ¶¶ 14-26 (Virga).

[5] The EEOC issued a Notice-of-Right to sue to Plaintiff LoMonaco on February 9, 2023. *See* Polito Decl., ¶ 26, Ex. JJ. Accordingly, Northwell does not seek dismissal of Plaintiff LoMonaco's claims for failure to exhaust her administrative remedies.

declarations indicate that they *did* receive their Notice-of-Right to Sue letter from the EEOC, but that it was issued within 180 days from the filing of their respective charges. *See* Dkt. 1-4, ¶¶15-16 (Burger); Dkt. 1-7 ¶¶15-16 (Corley-Dubose).

Despite the sworn allegations to the contrary, records from the EEOC conflict with many of the Plaintiffs' declarations.[6] *See* Polito Decl., ¶¶ 9-23, Exs. Q through II.

### D. Varughese's Settlement and Release

In addition to the various allegations noted above, one Plaintiff in particular, Plaintiff Varughese executed a Settlement Agreement releasing Northwell from all claims under federal, state, or local law, statute, ordinance or rule, including claims under Title VII. Goldberg Decl. ¶¶8-9, Ex. A, ¶5. In exchange for this release, the Settlement Agreement provided for consideration specified therein. *Id.* at ¶1.

## III. ARGUMENT

### A. Rule 12(b)(6) Motion Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). The allegations must be sufficient to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Id*. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

---

[6] The Court may consider the EEOC's records in ruling on this motion because they are either directly referenced in Plaintiffs' declarations or the declarations are predicated on them. *Muhammad v. NYC Transit Auth*., 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (courts routinely consider EEOC charges incorporated by reference into a pleading that references them). In addition, documents from administrative agencies are public records of which the Court may take judicial notice. *Id.*; *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (documents not referenced in complaint but "integral" to it may be considered on a motion to dismiss). Documents are incorporated as "integral" if they are key to a plaintiff's ability to pursue an action. *Id.*

'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In addition, to avoid dismissal, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557; *accord Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions").

**B.      Plaintiffs' Claims Must Be Dismissed For Failure to Exhaust Administrative Remedies**

Before filing suit under Title VII or GINA, a plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC. *Ragone v. Atl. Video*, 595 F.3d 115, 126 (2d Cir. 2010) (Title VII); *Guan v. N.Y.S. Dep't of Envtl. Conservation*, 16-CV-2180 (JMA) (GRB), 2019 WL 1284260, *3 (E.D.N.Y. Mar. 20, 2019) (GINA). "Exhaustion of administrative remedies through the EEOC stands as 'an essential element of Title VII's statutory scheme,' and one with which defendants are entitled to insist that plaintiffs comply." *Francis v. City of N.Y.*, 235 F.3d 763, 768 (2d Cir. 2000).  A claim is "barred unless the employee has exhausted available administrative remedies," *Hodges v. Attorney General of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (internal citations omitted), and failure to do so "operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018); *see also Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) … if the defense appears on the face of the complaint.") (internal quotation omitted).

The exhaustion process includes two components: "fil[ing] a timely complaint with the EEOC and obtain[ing] a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274

F.3d 683, 686 (2d Cir. 2001). A Charge is timely if it is filed with the EEOC within 300 days after the alleged discriminatory conduct. *Ragone*, 595 F.3d at 126. The EEOC is authorized to issue a right to sue notice if, after 180 days from charge filing, it has not acted on the charge. *See* 42 U.S.C. § 2000e-5(f)(1). A plaintiff then has 90 days of receipt of a right-to-sue letter from the EEOC to file suit. 42 U.S.C. § 2000e-5(f)(1); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). "The timeliness requirement of Title VII 'is analogous to a statute of limitations.'" *McPherson v. New York City Dept. of Educ*, 457 F.3d 211, 214 (2d Cir. 2006) (citation omitted). In this case, Plaintiffs never filed a charge within the requisite time period and merely offer conclusory allegations as an excuse.

### 1. Plaintiffs' Conclusory Assertions Do Not Relieve Their Obligation to Exhaust Administrative Remedies

Plaintiffs[7] *admit* they did not exhaust their administrative remedies because they either never filed a Charge at all or never filed a timely Charge (it is not clear which), and they claim the EEOC is to blame. Most of the Plaintiffs[8] allege almost identical boilerplate, conclusory allegations that the EEOC did not "permit" them to schedule an Intake Interview, did not "permit" them to file a Charge (or a timely Charge), failed to communicate with them, "lied" to them (it is not clear about what), and that something about the EEOC's "website, public portal, public phone system, and other statements and representations lulled [them] into believing that [they] timely filed a Charge." *See*, *e.g.*, Dkt. 1-2, ¶25. None of these allegations are sufficient to invoke equitable relief and relieve them of their obligations to administratively exhaust their claims.

---

[7] Except Plaintiff LoMonaco. *See* note 5, *supra*.

[8] Two outliers are Plaintiffs Mackey and Scalici. Mackey alleges an EEOC Investigator advised her not to file a Charge. Dkt. 1-18, ¶17. Mackey's decision to take that advice instead of exhausting her administrative remedies was *her choice*, not a basis to excuse her from the exhaustion requirement. Scalici alleges an EEOC Investigator told her she was not discriminated against and "prohibited" her from filing a Charge. Dkt. 1-21, ¶17. As will be discussed below, the EEOC could not have "prohibited" her from filing a Charge.

a. **Plaintiffs' Vague Allegations Do Not Entitle Them to Equitable Relief For Failing to Exhaust Their Administrative Remedies.**

Plaintiffs seek to be excused from the most basic prerequisite to filing suit in Federal Court —filing a Charge—by citing to the doctrine of equitable estoppel in their declarations. The doctrine "is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60-61 (2d Cir. 1986) (citation omitted). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). The plaintiff must demonstrate "his ignorance is not attributable to a lack of diligence on his part." *Netzer v. Continuity Graphic Assoc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997). Plaintiffs' vague allegations that the EEOC would not "permit" them to file a Charge and "lulled" them into believing they had are completely undermined by the facts, and insufficient to demonstrate that their "ignorance is not attributable to a lack of diligence on [their] part." *Netzer*, 963 F. Supp. at 1316.

First, the EEOC could not have denied Plaintiffs' permission to file a Charge. In fact, the EEOC makes several avenues available to persons who wish to file Charges, including by simply mailing a signed letter to the EEOC.[9] The requirements for the content of the letter are publicly posted on the EEOC's website at https://www.eeoc.gov/how-file-charge-employment-discrimination. The same website provides information about the filing deadline and *recommends* filing by mail if the filing deadline is less than 60 days away. *See id.* A Charge can also be filed in

_____

[9] The EEOC also makes a Charge form available that can be filled out by the complaining party. Plaintiff Dunne used this method to file her Charge. *See*, *e.g.*, Polito Decl., Ex. Q.

person at an EEOC field office or with a local state agency and this information is available on the same website as Plaintiffs would have used to log in to the online public portal they allegedly used to make inquiries with the EEOC. *See id.* Accordingly, Plaintiffs' allegations that the EEOC prevented them from filing Charges is fatally flawed. Given that information about how to file a Charge <u>without the assistance of an EEOC Investigator</u> was readily available to Plaintiffs on the EEOC's website, Plaintiffs cannot credibly blame an Investigator or the website for their failure to exhaust (as they do).[10]

Second, if Plaintiffs made inquiries to the EEOC as they allege, they would have had access to their Online Inquiry Report by logging into the EEOC's online portal. *See*, *e.g.*, Polito Decl. ¶ 7, Ex. A (Activity Log for Plaintiff Cronin showing she viewed her Online Inquiry Report on March 9, 2022). The approximate deadline for filing a Charge is included in the EEOC's inquiry information. *See id.*, Ex. B (Cronin's Inquiry Information, including an approximate deadline for filing a Charge). This is in addition to the public information regarding filing deadlines on the EEOC's website. Plaintiffs cannot have reasonably relied on alleged *inaction* by the EEOC to "lull" them into believing they had filed timely Charges when they had access to such information yet did not file a Charge. Plaintiffs' claims of EEOC inaction do not identify any "definite misrepresentation of fact" – and certainly not by Northwell - and therefore, Plaintiffs could not have reasonably relied on the EEOC's inaction to make them believe they had filed timely Charge.

Similarly, equitable tolling cannot save Plaintiffs' claims. Like equitable estoppel, the doctrine may be applied where a *defendant's* misleading conduct causes a plaintiff to fail to assert a right. However, "where a non-defendant third party engages in such fraud or misleading conduct,

---

[10] For the same reason, Plaintiff Polizzi's allegation that the EEOC did not advise her of any way to file a Charge after she failed to reach it by "facsimile, telephone, e-mail … online" gets her nowhere. *See* Dkt. 1-19, ¶¶14, 19. Plaintiff Lau's claim that the EEOC told her an Intake Interview was required before she could file a Charge is similarly flawed. Dkt. 1-13, ¶16.

the doctrine's application is less clear." *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 665 (E.D.N.Y. 2015) ("Some district courts in this circuit have found a non-defendant's misleading conduct insufficient to warrant equitable tolling."). *See Perez v. Harbor Freight Tools*, 15-cv-05983 ADS SIL, 2016 WL 4734635, at *7 (E.D.N.Y. Sept. 9, 2016) (noting "many district courts in this Circuit have found that a non-employer's misleading conduct, such as a staff member at the EEOC, is insufficient to warrant equitable tolling"), *aff'd* 698 F. App'x 627 (2d Cir. 2017).[11]

Even if the doctrine of equitable tolling could be applied as to the EEOC's alleged actions, it is an extraordinary doctrine that will be applied only where the person seeking its application has acted "with reasonable diligence." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003), as amended (July 29, 2003). In *Zerilli*, the plaintiff claimed she "made more than twelve calls" to the assigned investigator before the investigator's supervisor admitted the EEOC's oversight cause a delay of several months. *Id.* at 78. The Second Circuit was not persuaded that the plaintiff should be equitably relieved of her obligation to file a timely Charge and affirmed the district court's dismissal of her Title VII claim. *Id.* at 81.

Moreover, Plaintiffs' vague and conclusory allegations are insufficient to invoke the doctrine. *Perez*, 2016 WL 4734635 at *8 (finding vague allegation that EEOC investigator misinformed plaintiff he had three years to file a charge did not excuse failure to file a timely charge); *see also Carasco v. New York City Off-Track Betting Corp.*, 858 F. Supp. 28, 32 (S.D.N.Y. 1994) (rejecting tolling argument based on plaintiff's unsupported contention that on an unspecified date she telephoned the EEOC and was misinformed about the time period in which could file a charge), *aff'd,* 50 F.3d 3 (2d Cir. 1995); *Moore*, 2016 WL 3963120 at *9 ("several

---

[11] *See also Moore v. City of N.Y.*, 15 Civ. 4578 (KPF), 2016 WL 3963120, *9 (S.D.N.Y. July 21, 2016) ("Under Second Circuit law, it is 'questionable' whether the EEOC's acts warrant equitable tolling when the EEOC is not a party to a plaintiff's complaint.").

courts in this District have declined to permit equitable tolling where a plaintiff makes unsupported allegations that she received misinformation from the EEOC").

Permitting Plaintiffs to unilaterally excuse themselves from the strict exhaustion requirements under Title VII and GINA by making vague allegations that the EEOC "misled" or "lied" to them or "lulled" them into failing to exhaust their administrative remedies via inaction would invite others to do the same. Courts have acknowledged that it would be "virtually impossible for the EEOC or a defendant to rebut a plaintiff's unsupported allegations" that the EEOC was at fault for their failure to exhaust administrative remedies. *Moore*, 2016 WL 3963120 at *9-10 (dismissing untimely claim where plaintiff alleged the EEOC misled her). Courts have recognized the potential for abuse that would arise if a plaintiff could avoid the exhaustion requirement so easily. *See, e.g., Conaway v. Control Data Corp.*, 955 F.2d 358, 363 (5th Cir. 1992) ("Allowing a plaintiff equitably to toll a time limitation based on incomplete information provided in a telephone conversation [with the EEOC] would create a great potential for abuse."); *Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 2d 1038, 1046-1047 (W.D. Tenn. 1999) (collecting cases for the proposition that "[t]he potential for abuse would be too great if a plaintiff could support a claim for equitable tolling with nothing more than an unverified allegation of having been misled by an unknown EEOC representative").

Permitting Plaintiffs' vague, "boilerplate" allegations blaming the EEOC for their failure to file timely Charges, would nullify the administrative exhaustion requirement by permitting employees, such as Plaintiffs, to avoid dismissal and force a defendant into costly litigation is to allege "the EEOC's dog ate her homework." For these reasons, the claims of all Plaintiffs who did not file Charges (or timely Charges) should be dismissed with prejudice.

### b. Plaintiffs' Do Not Argue for Equitable Relief on Their Second Cause of Action

Plaintiffs' GINA claim must be dismissed given they do not even argue that they attempted to exhaust their GINA claims. *See generally* Dkts. 1-2 to 1-21 and 1-23 to 1-26 at ¶14 of each, and Dkt. 1-22 at ¶18 (stating each Plaintiff contacted the EEOC to complain about religious discrimination and making no mention whatsoever of genetic information). Even assuming Plaintiffs were entitled to equitable relief for failing to exhaust their Title VII claim (which they are not), it would not save their GINA claim as it is not "reasonably related" to their claims of discrimination based on religious beliefs. *Schiappa v. Brookhaven Science Associates, LLC*, 403 F. Supp. 2d 230, 235 (E.D.N.Y. 2005) (noting that a claim not asserted in an EEOC charge has not been exhausted unless it is "reasonably related" to the claim asserted in the charge). "Generally, '[c]ourts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge.'" *Warshun v. N.Y. Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 268 (E.D.N.Y. 2013) (collecting cases holding one type of discrimination was not reasonably related to another). It is not enough that two claims "arise out of the same conduct" unless the plaintiff provided enough information to apprise the EEOC that a second type of claim was at issue. *Id.* at 268-269. "The purpose of the exhaustion requirement—namely, to encourage settlement of discrimination disputes through conciliation and voluntary compliance—would be defeated if a plaintiff could litigate a claim not previously presented to the EEOC." *Lewis v. NYC Transit Auth.*, 12 F. Supp. 3d 418, 435 (E.D.N.Y. 2014). Accordingly, Plaintiffs' GINA claim must be dismissed with prejudice.

### 2. Even Taking the EEOC Documents Into Account, Plaintiffs Are Not Relieved of Administrative Exhaustion Prerequisite

As noted above, this Court may consider the EEOC's records because Plaintiffs' declarations either directly reference or are predicated on them. Alternatively, this Court may take

judicial notice of the same. *See* note 6 *supra*. However, even taking these documents into consideration, Plaintiffs' Complaint must be dismissed given their failure to exhaust their administrative remedies.

### a. Plaintiffs' Failure to File Charges

As discussed in Section III.B.1 *supra*, Plaintiffs' vague and conclusory allegations are insufficient to warrant equitable estoppel. Moreover, the EEOC's records contain no information that Plaintiffs Bebber, Burger, Christy, De La Rosa, Duda, Lau, Liff, Luberda, MacDonald, Polizzi, Rawcliffe, Scalici, Stein, or Virga made any effort to file a Charge with the EEOC. *See* Polito Decl., ¶8, Exs. C through P. Accordingly, these Plaintiffs' claims must be dismissed for failing to exhaust their administrative remedies.

### b. Plaintiff Adamowicz's and Dunne's Charges Were Untimely Filed on its Face

Although Dunne claims in her sworn declaration that she was "unable to formally file a Charge" (Dkt. 1-12, ¶21), she actually did. Doing what *any* Plaintiff *could have* done, Dunne handwrote her Charge and submitted it to the EEOC. Polito Decl., Ex. Q. However, Dunne filed her Charge more than 300 days after her termination. *Id.* As such, the EEOC dismissed it as having been untimely filed. *Id.*, Ex. R. Likewise, Plaintiff Adamowicz's First Charge was filed on October 4, 2022 and identified the last date of discrimination as September 27, 2022. *Id.*, Ex. S. As such, the EEOC dismissed Plaintiff Adamowicz's First Charge as untimely. *Id.*, Ex. T. Although the EEOC issued Adamowicz and Dunne a right-to-sue notices, the notices do not operate to relieve Plaintiffs of the effect of their late filings. *See McPherson v. New York City Dept. of Educ*, 457 F.3d 211, 214 (2d Cir. 2006) ("a right-to-sue letter enables a private suit only if it is issued in connection with an administrative charge that is timely filed"). Because Adamowicz's

First Charge and Dunne's only Charge was filed more than 300 days after their terminations, their claims must be dismissed with prejudice.

<strong>c. Plaintiffs Burger, Corley-Dubose, Cronin, Diaz-Chambless, and Stevens' Claims Must Be Dismissed Because They Were Not Pending Before the EEOC for 180 Days[12]</strong>

As the Second Circuit explained, "[t]he purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998). Moreover, "Section 2000e-5(f)(1) plainly provides that, after a charge has been filed, the EEOC has 180 days to dismiss the charge or file a civil action. Only after 180 days have elapsed may the charging party pursue his or her claims in court." *Gibb v. Tapestry, Inc.*, No. 18-CV-6888, 2018 WL 6329403, at \*4 (S.D.N.Y. Dec. 3, 2018). In fact, the *Gibb* Court held where, as here, a right-to-sue letter is issued early, it is fatally defective. *Id.* at \*6.

Plaintiffs Burger and Corley-Dubose admittedly obtained a right-to-sue letter less than 180 days after filing their Charges. Dkts. 1-4 ¶15; 1-7 ¶15.[13] According to the EEOC, Plaintiffs Cronin, Diaz-Chambless, and Stevens did the same.[14] *See* Polito Decl., Exs. X, BB, DD. Therefore, Plaintiffs Burger, Corley-Dubose, Cronin, Diaz-Chambless, and Stevens failed to secure a valid

---

[12] As discussed below, Corley-Dubose and Diaz-Chambless also did not file suit within 90 days after receiving their right-to-sue notices. Accordingly, their claims are subject to dismissal on both grounds.

[13] As discussed in Section III.B.1.a, Plaintiffs Burger and Corley-Dubose argue that the EEOC investigator failed to provide them with legal advice regarding the 180-day window but that does not save their claims from dismissal, as the EEOC has no duty to do so. *See* Dkts. 1-4 and 1-7 at ¶¶15-16. *See also Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 90 (2d Cir. 2013) ("a party's silence does not give rise to a claim of equitable estoppel when the party has no duty to speak"); *Cortez v. E.E.O.C*, 585 F. Supp. 2d 1273, 1291 (D.N.M. 2007) ("The EEOC, however, does not occupy a lawyer's fiduciary/professional service position vis-a-vis charging parties. The EEOC could run afoul of state laws concerning the unlawful practice of law if it offered legal advice to charging parties."). Notably, Diaz-Chambless specifically requested an early right-to-sue notice on the advice of counsel. Polito Decl., Ex. X.

[14] As noted above, Cronin, Diaz-Chambless, and Stevens all state in their declarations that the EEOC did not permit them to file Charges (*see* Dkt. 1-8, ¶21; Dkt. 1-10, ¶21; Dkt. 1-23, ¶21), although the Charges were clearly filed, they failed to secure a valid Notice-of-Right to sue letter.

right to sue letter which is fatal to their federal claims, and therefore must be dismissed for failure to exhaust their administrative remedies.

### d. Plaintiffs Adamowicz, Diaz-Chambless, and Corley-Dubose Did Not File Suit Within 90 Days

The requirement to file suit within 90 days of receiving a right-to-sue notice "should be strictly enforced and not extended 'by even one day.'" *Holmes v. NBC/GE*, 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) (*citing Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984)); *see also Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (finding claim time-barred when claimant commenced suit 93 days after receipt of right-to-sue letter). "A plaintiff's failure to file a claim within the time limits set by Title VII … will ordinarily preclude her from pursuing that claim in federal court and can warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Moore v. City of N.Y.*, No. 15 Civ. 4578 (KPF), 2016 WL 3963120, at *6 (S.D.N.Y. July 21, 2016) (citation omitted).

Plaintiffs Adamowicz (First Charge), Diaz-Chambless, and Corley-Dubose each filed a Charge with the EEOC and then instituted this lawsuit 133, 93, and 148 days, respectively, after downloading their right-to-sue notices from the EEOC's online user portal. Polito Decl. ¶¶12, 16, 28, Exs. T, X, Z. Because they did not file suit within 90 days after receiving their right-to-sue notices, their claims must be dismissed with prejudice. *See Rosas v. Berry Plastics*, 649 F. App'x 3 (2d Cir. 2016) (affirming dismissal of Complaint filed more than 90 days after Charge was presumed received); *see also Rasmussen v. Sigma Corp. of America*, 27 F. Supp. 2d 388, 392 (E.D.N.Y. 1998) ("once the 90 days have passed after receipt of the letter, a plaintiff may no longer bring suit").

### e. Plaintiffs Adamowicz, Chan, Cronin, and Weiss Receipt of Right-To-Sue Notices After Filing Suit Precludes Their Claims

Plaintiffs Adamowicz (Second Charge), Chan, Cronin, and Weiss subsequent receipt of their right-to-sue letters does nothing to save their claims for failure to exhaust administrative remedies. *See, e.g.*, *Syeed v. Bloomberg, L.P.*, 568 F.Supp.3d 314, 334-36 (S.D.N.Y. 2021) (dismissing Title VII claim for failure to exhaust even notwithstanding plaintiff's receipt of right-to-sue letter after filing the complaint); *Doe v. Hochul*, No. 21-CV-1078, 2022 WL 446332, at *6-8 (N.D.N.Y. Feb. 14, 2022) (dismissing healthcare worker's Title VII claim for failure to exhaust her administrative remedies); *Klimovitsky v. JG Innovative Industries, Inc.*, No. 21-CV-755 (MKB), 2021 WL 5712120, at *5 (E.D.N.Y. Dec. 1, 2021) (dismissing the plaintiff's Title VII claims without prejudice for failure to exhaust administrative remedies); *Johnson v. Xylem, Inc.*, 613 F.Supp.3d 677, 679-680 (W.D.N.Y. 2020) (dismissing Title VII claims where plaintiff had not receive a right-to-sue letter prior to initiating his lawsuit). In fact, in *Doe v. Hochul*, where the plaintiffs made similar claims against their employers following the implementation of the DOH Mandate, the Northern District of New York found that even where the plaintiffs alleged in their amended complaint that they filed charges with the EEOC and requested right-to-sue letters, it was insufficient to withstand a motion to dismiss. 2022 WL 446332, at *6. Adamowicz, Cronin, Chan, and Weiss[15] undoubtedly received their right-to-sue notices after this Complaint was filed on February 16, 2023. *See* Polito Decl., ¶¶ 14, 19, 21, 22, Exs. V, BB, EE, GG. Accordingly, their claims must be dismissed.

---

[15] Weiss represented in her declaration that she filed her claim with the NYSDHR, and she claims neither it nor the EEOC has issued a right-to-sue notice. Dkt. 1-26, ¶¶17, 20, 23. Weiss' declaration misrepresents the facts. The NYSDHR issued a Determination and Order After Investigation to Weiss on September 16, 2022. *See* Polito Decl. ¶ II. The NYSDHR determined there was no probable cause to believe Northwell engaged in any unlawful or discriminatory practice, as the requested "accommodation" would have posed an undue hardship. *Id.* at 2. The NYSDHR's Notice informed Weiss that she had 60 days to appeal the decision to the New York State Supreme Court

### C. Plaintiffs Fail to State a Plausible Claim for Religious Discrimination in Violation of Title VII

Even assuming arguendo that all of the claims exhausted their administrative remedies (and Varughese's release does not bar this suit), Plaintiffs' claims fail as a matter of law. Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to the terms or conditions of employment because of such individual's religion, among other protected characteristics. 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of religious discrimination under Title VII, Plaintiffs must plausibly plead that: (1) they hold a sincere religious belief that conflicted with an employment requirement; (2) they informed their employer of the conflict; (3) their employer discriminated against them *because of* their religious beliefs by enforcing the employment requirement; and (4) as a result, they suffered an adverse employment action. *See Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020); *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006); *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F.Supp.2d 215, 232 (E.D.N.Y. 2012). Then the burden shifts to the employer to show that it could not reasonably accommodate plaintiff without undue hardship on the conduct of the employer's business. *See* 42 U.S.C. § 2000e(j); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 (1986). Moreover, as the Second Circuit has explained, "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *We The Patriots II*, 17 F.4th at 292.

#### 1. Plaintiffs Fail to Plausibly Plead a *Prima Facie* Claim

Plaintiffs fail to plead a plausible *prima facie* claim for two reasons: they cannot establish they were qualified for their positions, nor can they plausibly plead Northwell discriminated

---

(not this Court) and 15 days to submit a written request to the EEOC for review. *Id*. at 2. Weiss does not claim she sought review by the EEOC. *See generally* Dkt. 1-26, ¶23.

against them based upon their religious beliefs.

As the Second Circuit has explained, "[v]accination [against COVID-19] is a condition of employment in the healthcare field." *We the Patriots USA, Inc.*, 17 F.4th at 294. Indeed, courts in the Second Circuit and elsewhere "have repeatedly found that vaccination against COVID-19 is a proper condition of employment." *Kane v. de Basio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (collecting cases). Once Plaintiffs refused to be vaccinated against COVID-19, they were no longer meeting a basic qualification to hold a position in healthcare—by law, per Northwell's policy, and as a health and safety matter—and cannot, on that basis, maintain a claim for religious discrimination. *See D'Cunha v. Northwell Health Sys.*, No. 1:22-cv-0988 (MKV), 2023 WL 2266520, *3 (S.D.N.Y. Feb. 28, 2023), *appeal filed* 2023 WL 2266520 (dismissing religious discrimination claim of employee who was not vaccinated and, therefore, could not allege she was qualified for her position).

Moreover, Plaintiffs have not plausibly pled the third element of their *prima facie* claim – namely that Northwell discriminated against them *because of* their religion, as required under either a failure-to-accommodate theory or a disparate treatment theory. *Lowman*, 821 F. App'x at 31. It is well settled that dismissal of Title VII claims are warranted at the pleading stage where plaintiffs do "not allege that [they were] discriminated against because of [their] religion." *Sealey v. Affiliated Computer Servs., Inc.*, 2012 WL 729217, at *3 (W.D.N.Y. Mar. 6, 2012), *aff'd* 522 F. App'x 35 (2d Cir. 2013).[16]

In fact, Plaintiffs acknowledge that Northwell "did not contest the validity of [their]

---

[16] *See also Reyes v. Westchester Cty. Health Care Corp.*, 2021 WL 4944285, at *4 (2d Cir. Oct. 25, 2021) (affirming dismissal of failure-to-accommodate claim where the plaintiff failed to allege that her employer discriminated against her "because of" her national origin); *LaBarbera v. NYU Winthrop Hosp.*, 527 F.Supp.3d 275, 290 (E.D.N.Y. 2021) (a *prima facie* disparate treatment claim requires allegations that "an employer treats some people less favorably than others because of a protected characteristic") (internal citations and quotations omitted).

religious beliefs."[17] Compl. ¶ 49. More importantly, Plaintiffs *admit* Northwell terminated their employment *to comply with New York law*, *not because of their religious beliefs*. *See* Compl. ¶ 36 ("Northwell relied upon Title 10 N.Y. Comp. Codes R. & Regs. ¶ 2.61," which "made it unlawful for Northwell to exempt its employees from being vaccinated against COVID-19 on the basis of their religion."). Given this admission that Plaintiffs were terminated as a result of their request for an unlawful vaccination exemption, Plaintiffs have not plausibly pled their employment was terminated due to religious discrimination. This is fatal to their claim. *See D'Cunha*, 2023 WL 2266520 at *2 (holding plaintiff failed to raise an inference of discrimination where she alleged she was terminated for refusing to be vaccinated, not due to her religion); *Billings v. New York State Department of Corrections & Community Supervision*, 2021 WL 4150925, at *6 (S.D.N.Y. Sept. 10, 2021) (dismissing Title VII religious discrimination claim on the ground that the employee's "own pleadings demonstrate that she admitted that she was dismissed for non-discriminatory reasons.").

For these reasons, in addition to failing to exhaust a claim for religious discrimination, Plaintiffs have also failed to plausibly state such a claim.

### 2. Plaintiffs' Request to be Exempted from Northwell's Vaccination Requirement Would, if Granted, Have Constituted an Undue Hardship to Northwell

"Although undue hardship is an affirmative defense, it may be raised on a pre-answer motion to dismiss when the facts establishing it are clear from the face of the complaint." *Dennison v. Bon Secours Charity Health System Medical Group, P.C.,* No. 22-CV-2929 (CS), 2023 WL

---

[17] The sole allegation Plaintiffs make to attempt to raise some inference of religious animus – and to be clear, the inference is incredibly strained – is that Northwell created a "Religious Exemption Request Form" but did not create a means to seek an accommodation. Compl. ¶¶38-39. Nonetheless, each Plaintiff claims to have submitted a request for a religious accommodation. *Id.* ¶¶47-18, 54, 60-61, 63; Dkts. 1-2 through 1-21 at ¶10 of each; Dkt. 1-22 at ¶14. They do not allege Northwell prevented them from submitting those requests. *See id.*

3467143, *5 (S.D.N.Y. May 15, 2023), citing *Lowman v. NVI LLC*, 821 F. App'x 29, 32 (2d Cir. 2000). As held by the Second Circuit, "Title VII does not obligate an employer to grant an accommodation that would cause 'undue hardship on the conduct of the employer's business.'" *We The Patriots II*, 17 F.4th at 370 (quoting 42 U.S.C. § 2000e(j)); *see also Lowman*, 821 F. App'x at 32 (accommodation in violation of state law imposes an undue hardship). Nor does Title VII "require [an employer] to provide the accommodation that Plaintiffs prefer." *We The Patriots II*, 17 F.4th at 370; *see also Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (same).

Rather, as stated in the DOH Mandate and clarified by the Second Circuit, the *sole* available religious accommodation available under the DOH Mandate is one that would remove the healthcare worker from the scope of the DOH mandate, *i.e.*, move them to a form of employment that does not fall within the Mandate's definition of covered "personnel." *We The Patriots II*, 17 F.4th at 370. "Personnel" is defined as someone who might expose co-workers, patients or the public to COVID-19. *See* 10 N.Y.C.R.R. § 2.61 (c). In their Complaint, Plaintiffs do not seek here to be removed from the definition of "personnel" by alleging they should have been transferred to positions in which they would not expose co-workers, patients or the public to COVID-19; rather, they contend they should have been permitted to continue working in their same positions, unvaccinated, while employing other "mitigation protocols," such as "wearing masks, socially distancing, and testing for COVID-19 on a weekly basis." Compl. ¶¶56-59, 76-77, 89. Yet that "accommodation" (*i.e.*, a blanket exemption) would have required Northwell to violate the DOH Mandate. *See* 10 N.Y.C.R.R. § 2.61 (a)(2), (c) (requiring Northwell to "continuously require" employees be fully vaccinated against COVID-19 if they "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.").

Many courts in the Second Circuit have been presented with claims by healthcare workers that are identical to Plaintiffs' Title VII claims set forth herein. Those claims have consistently been dismissed. As one such court recently noted:

> A long line of cases in the Southern and Eastern Districts of New York have considered the application of [the DOH] Mandate to persons whose religious beliefs allegedly conflict with the taking of a COVID-19 vaccine. Those cases have uniformly rejected claims that an employer is required by Title VII to accommodate a request for religious exemption from the Mandate at the cost of violating Section 2.61 and thus New York Law.

*Cagle v. Weill Cornell Medicine*, No. 22-cv-6951 (LJL), 2023 WL 4296119, *4 (S.D.N.Y. June 30, 2023) (internal citations omitted) (collecting cases).[18]

The reasoning behind all these decisions is simple – where, as here, plaintiffs seek a religious "accommodation" in the form of a blanket exemption from the DOH Mandate is not permitted, and thus that request created an undue hardship for their employers as a matter of law. *See Does 1-2 v. Hochul*, 632 F.Supp.3d 120, 145 (E.D.N.Y. 2022) ("The sole 'accommodation' the plaintiffs seek—a religious exemption from the vaccine requirement—would impose an undue burden on the [defendants] because it would require them to violate state law."); *Cagle*, 2023 WL 4296119 at *4, n.2 (dismissing nurse's Title VII claim because the "accommodation" she sought – to work unvaccinated – would have violated the DOH Mandate) (citing *Groff v. DeJoy*, 600 U.S. ----, 2023 WL 4239256, *10 (2023)); *Algarin v. NYC Health + Hosps. Corp.*, No. 1:22-cv-8340 (JLR), 2023 WL 4157164, at *8 (S.D.N.Y. June 23, 2023) (dismissing claim of office worker who sought "accommodation" of weekly testing in lieu of vaccination, because "providing the sought

---

[18] This concept is no different in the context of COVID-19 vaccination than it is in other contexts. *See*, *e.g.*, *Hamilton v. City of New York*, 563 F. Supp. 3d 42, 55 (E.D.N.Y. 2021) (granting summary judgment on religious discrimination claim where requested accommodation would have posed an undue hardship because it would have required the employer to violate OSHA regulations), *citing Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021). Plaintiffs seek to upend settled Title VII law.

religious exemption would create an undue hardship on the employer who would be in violation of the state rule"); *Dennison*, 2023 WL 3467143, at *2, *6 (requesting accommodation to follow prior protocols "namely, testing, masking, distancing, and sanitizing," would have violated the DOH Mandate and caused undue hardship for employer); *Shahid-Ikhlas v. The New York & Presbyterian Hosp., Inc.*, No. 1:22-cv-10643 (GHW) (SDA), 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023) ("It is well established that Defendant **would suffer an undue hardship as a matter of law** if it was required to accommodate Plaintiff by exempting Plaintiff from the vaccine requirement … because such accommodation would require Defendant to violate the law.") (emphasis added); *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3912 (LAP), 2023 WL 2711415 at **7-8 (S.D.N.Y. Mar. 30, 2023) (dismissing claim of hospital office worker who wanted to employ "safety protocols" in lieu of vaccination because it would have required hospital to violate the DOH Mandate); *D'Cunha*, 2023 WL 2266520 at *3 (dismissing claim against Northwell because granting request to work unvaccinated was "foreclosed by *We The Patriots*" and would have posed an "unacceptable health and safety threat to patients, co-workers, and visitors"); *Riley v. New York City Health & Hosps. Corp.*, No. 22-cv-2736, 2022 WL 2118073, *4 (S.D.N.Y. Feb. 17, 2023) (holding plaintiff's request to continue working in a position with direct contact with others "would cause defendant the undue hardship of forcing it to violate [the DOH Mandate]"); *Marte v. Montefiore Med. Ctr.*, No. 22-CV-03491-CM, 2022 WL 7059182, at *2 (S.D.N.Y. Oct. 12, 2022) (dismissing Title VII religious discrimination claim as "fundamentally flawed in light of existing caselaw" which holds the "accommodation" of working unvaccinated "qualifie[s] as an undue hardship under New York State and City laws").

As noted by the Southern District, "Title VII cannot be used to require employers to break the law." *Dennison*, 2023 WL 3467143, at *6, citing *Bey v. City of New York*, 999 F.3d 157, 170

(2d Cir. 2021). As is true here, plaintiffs' requests for "accommodations" were actually requests to be exempted from the DOH Mandate, but no such exemption was permitted. *See id.* The court also noted that "[a]side from the [DOH] Mandate, there is also the obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing Plaintiffs to remain unvaccinated while working at their respective facilities," as well as "the risk of civil liability to anyone infected by an unvaccinated employee." *Id.* at n.7. As such, the Court dismissed the plaintiff's Title VII claim. *Id.* at *7.

Moreover, any argument regarding a subsequent decision by a New York state trial court, or subsequent recommendation for repeal by New York State's Department of Health, is unavailing. As noted by the Southern District of New York:

> That the Onondaga County Supreme Court invalidated the State Mandate in 2023 does not change the outcome here. First, that decision is non-binding and has not yet made its way to the New York Court of Appeals. Second, the Appellate Division promptly stayed it, allowing the State Mandate to remain in effect. Third, and more fundamentally, a 2023 ruling has no bearing on the actions of Defendants in 2021.

*Dennison*, 2023 WL 3467143 at *6, n.8 (citing *Med. Prof'ls for Informed Consent v. Bassett*, 185 N.Y.S.3d 578, 585-86 (Sup. Ct. 2023)). *See also Algarin*, 2023 WL 4157164 at *9 (noting that "the May 24, 2023 letter from the DOH stating that, effective immediately, the DOH will not enforce [the DOH Mandate] … does not change the fact that [the DOH Mandate] was in full force and effect in 2021 at the time of the employment actions with respect to Plaintiff"); *Med. Prof'ls for Informed Consent v. Bassett*, 2023 N.Y. Slip. Op. 62807(U), 2023 WL 2344242 (N.Y. App. Div. 2023) (staying enforcement of Onondaga County Court's ruling).

D.            **Plaintiffs Fail to State a Plausible Claim for Violation of GINA**

"To state a claim under GINA, [the p]laintiff must allege '(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from

[the p]laintiff's genetic tests.'" *Welch v. Bio-Reference Labs., Inc.*, No. 1:19-CV-846 (BKS/DJS), 2019 WL 4805533, at *2 (N.D.N.Y. Oct. 1, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 6134359 (Nov. 19, 2019).[19] Plaintiffs' GINA claim is erroneously premised on the allegation that "by learning Plaintiffs were unvaccinated, Northwell obtained genetic information" about them. *See* Compl. ¶99. Plaintiffs' GINA claim fails because COVID vaccination status does not relate to "genetic information" as that term is defined by GINA. *See* 42 U.S.C. § 2000ff(4)(A).[20]

Contrary to Plaintiffs' theory, the EEOC has explained that GINA is not implicated by an employer's vaccination requirement:

> **K.14. Is Title II of GINA implicated if an employer requires an employee to receive a COVID-19 vaccine administered by the employer or its agent?** *(Updated 5/28/21)*
>
> **No.** Requiring an employee to receive a COVID-19 vaccination administered by the employer or its agent would not implicate Title II of GINA unless the pre-vaccination medical screening questions include questions about the employee's genetic information, such as asking about the employee's family medical history. As of May 27, 2021, the pre-vaccination medical screening questions for the first three COVID-19 vaccines to receive Emergency Use Authorization (EUA) from the FDA do not seek family medical history or any other type of genetic information. See CDC's Pre-vaccination Checklist (last visited May 27, 2021). Therefore, an employer or its agent may ask these questions without violating Title II of GINA.
>
> The act of administering a COVID-19 vaccine does not involve the use of the employee's genetic information to make employment decisions or the acquisition or disclosure of genetic information and, therefore, does not implicate Title II of GINA.

---

[19] GINA prohibits employer from discriminating against an employee based on "genetic information." 42 U.S.C. § 2000ff-1(a). Specifically, an employer may not discharge an employee on the basis of their "genetic information," or "request, require, or purchase" an employee's genetic information. 42 U.S.C. § 2000ff-1(a)(1), (b).

[20] "Genetic information" is defined as information about an individual's "genetic tests," the genetic tests of the individual's family members, and "the manifestation of a disease or disorder in family members of such individual." *Id.* A "genetic test" is the "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7).

**K.15. Is Title II of GINA implicated when an employer requires employees to provide documentation or other confirmation that they received a vaccination from a health care provider that is not affiliated with their employer (such as from the employee's personal physician or other health care provider, a pharmacy, or a public health department)?** *(Updated 10/13/21)*

**No.** An employer requiring an employee to show documentation or other confirmation of vaccination from a health care provider unaffiliated with the employer, such as the employee's personal physician or other health care provider, a pharmacy, or a public health department, is not using, acquiring, or disclosing genetic information and, therefore, is not implicating Title II of GINA. This is the case even if the medical screening questions that must be asked before vaccination include questions about genetic information, because documentation or other confirmation of vaccination would not reveal genetic information. Title II of GINA does not prohibit an employee's own health care provider from asking questions about genetic information. This GINA Title II prohibition only applies to the employer or its agent.

*See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, *available at*: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited July 5, 2023) (emphasis added) (formatting in original).

Courts facing the same arguments made by Plaintiffs here have applied the EEOC's guidance in dismissing discrimination claims made under GINA. *See Anderson v. United Airlines*, 577 F. Supp. 3d 1324, 1332-33 (M.D. Fla. 2021) (citing EEOC guidance and holding plaintiff seeking injunctive relief was unlikely to succeed on GINA claim based on COVID vaccination policy); *Harden v. Honeywell Int'l*, No. 1:23-cv-00176-JPB, 2023 WL 3310172, *1, 4 (N.D. Ga. May 8, 2023) (plaintiff's assertions that vaccination altered genes "did not show that vaccination for COVID-19 meets the definition of "genetic information" that is set forth in GINA"); *Gross v. N. Dakota Univ. Sys.*, No. 3:21-cv-206, 2022 WL 2612121, *3 (D. N.D. Jan. 10, 2022) ("It is unlikely that detection or false detection of the *COVID*-19 virus would constitute genetic information for purposes of GINA."), *report and recommendation adopted*, 2022 WL 2612120

(Feb. 9, 2022).

Since the EEOC guidance precludes claims like those set forth by Plaintiffs, the purported GINA claims should be dismissed.

### E.    Varughese's Claims Are Barred By Her Release

Rule 12(b)(6) requires dismissal of a Complaint for failing to state a claim for relief when, from the face of the complaint, "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d. Cir. 2005). "[A]ffirmative defenses, including the enforcement of a general release, are properly considered by a court as part of a motion to dismiss under Rule 12(b)(6)." *Dechberry v. New York City Fire Dep't,* 124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) (internal quotes and citation omitted). Even if not referenced in the Complaint, "if [a] Settlement Agreement would dispose of this matter … it makes no sense to deny dismissal simply because it was not referenced in the Complaint." *Loeb v. Cnty. of Suffolk*, 22-CV-6410 (HG), 2023 WL 4163117, *5 (E.D.N.Y. June 23, 2023).

"[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Tromp v. City of New York,* 465 F. App'x 50, 51 (2d Cir. 2012) (citing *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir.2002)). "Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Id.* "Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Pampillonia,* 138 F.3d at 463. A valid release bars the releasing party from bringing a subsequent claim. *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 463 (2d Cir.1998) ("the release … bars the plaintiff from bringing the present action"); *Tromp*, 465 F. App'x at 51 (affirming dismissal of released claim); *Dechberry*, 124 F. Supp. 3d at 144 (dismissing released claims); *see also Tavoulareas v. Bell*, 292 A.D.2d 256,

257 (1st Dept. 2002) (holding court erred when it denied motion to dismiss claims subject to a settlement agreement containing release of all claims against defendant).

On May 6, 2022, Varughese executed a Settlement Agreement that includes a release of all federal claims (including, but not limited to Title VII claims) against Northwell arising out of her employment and termination. Goldberg Decl., Ex. A, ¶5. The release is clear and unambiguous and is signed by Varughese. *Id.* at p. 2. Because Varughese executed an unambiguous release of all federal claims against Northwell, her Title VII and GINA claims are barred and must be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendant Northwell Health Inc. (incorrectly sued as Northwell Health Systems) asks that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, and requests all other appropriate relief.

Dated: Fairport, New York
      July 31, 2023

LITTLER MENDELSON, P.C.

By: */s/ Jacqueline Phipps Polito*
    Jacqueline Phipps Polito
    jpolito@littler.com
    Erin M. Train
    etrain@littler.com
    375 Woodcliff Drive, Suite 2D
    Fairport, NY 14450
    Telephone: 585.203.3400
    Facsimile: 585.203.3414

    Attorneys for Defendant
    NORTHWELL HEALTH, INC.