UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GENE  ADAMOWICZ, *et al.*

                    Plaintiffs,

                                                    Case No.: 2:23-cv-01277-JMA

          -against-

NORTHWELL HEALTH SYSTEMS,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Dated: August 14, 2023

                              Respectfully  submitted,


                              /s/ MICHAEL A. YODER
                              Michael A. Yoder
                              LAW OFFICE OF MICHAEL A. YODER PLLC
                              2300 Wilson Blvd., Suite 700
                              Arlington, VA 22201
                              Tel: (202) 595-4504
                              michael@yoderesq.com

                              *Attorney for Plaintiff*

- i -

**TABLE OF CONTENTS**

DESCRIPTION                                                                              PAGE

INTRODUCTION ................................................................................1

STANDARD  OF  REVIEW .......................................................7

ARGUMENT ......................................................................................8

   I.  NORTHWELL CANNOT SKIRT LIABILITY BASED ON THE "UNDUE
      HARDSHIP" AFFIRMATIVE DEFENSE ........................................8

      A. SECTION 2.61 IS PREEMPTED BY TITLE VII .........................3

      B. IF SECTION 2.61 IS NOT PREEMPTED, THAT MEANS NORTHWELL IS NOT
         PROHIBITED FROM ACCOMMODATING PLAINTIFFS .................5

  II.  EVEN IF SECTION 2.61 IS NOT PREEMPTED, IT MUST STILL HAVE BEEN
      ENACTED LAWFULLY ...............................................................7

 III. EVEN IF SECTION 2.61 WAS NOT PREEMPTED AND IT WAS LAWFULLY
      ENACTED, NORTHWELL STILL CANNOT RELY ON IT TO ESTABLISH AN
      UNDUE HARDSHIP ....................................................................11

      A. PLAINTIFFS REQUESTED REASONABLE RELIGIOUS ACCOMMODATIONS *TO*
         NORTHWELL'S MANDATORY VACCINATION POLICY, NOT EXEMPTIONS *FROM*
         NORTHWELL'S POLICY ...........................................................12

      B. A PLAIN READING OF SECTION 2.61 REVEALS NO ENFORCEMENT PROVISIONS
         EXIST, AND EVEN IF IF THE REGULATION WERE TO BE VIOLATED, A
         VIOLATION DOES NOT SUBJECT ANY OFFENDER TO "CIVIL FINES, PENALTIES,
         AND LOSS OF LICENSURE"
         OPPORTUNITY TO BE HEARD IN A REASONABLE TIME AND MANNER ......13

 IV. EVEN IF § 2806(1)(a) APPLIED TO SECTION 2.61, NORTHWELL FAILS TO
      SUFFICIENTLY ALLEGE AN UNDUE HARDSHIP EXISTS .............13

  V.  PLAINTIFFS' 300-DAY POST TERMINATION PERIOD TO FILE A CHARGE
      WITH THE EEOC IS ENTITLED TO EQUITABLE TOLLING ...........15

      A. THE COMPLAINT AND DECLARATIONS ATTACHED THERETO SUFFICIENTLY
         ALLEGE THAT THE EEOC LULLED PLAINTIFFS INTO BELIEVING THEY TIMELY
         FILED THEIR CHARGES .............................................................15

      B. EQUITABLE TOLLING SHOULD EXTEND TO EEOC MISREPRESENTATIONS
         THAT CAUSE A PLAINTIFF TO PREMATURELY REQUEST HIS OR HER RIGHT-
         TO-SUE LETTERS ....................................................................18

C.  Plaintiffs Adamowicz, Chan, Cronin, and Weiss Merely Need to Be Entitled to Right-to-Sue Letters; They Need Not Possess Them at the Time This Action is Filed ........................................................................ 19

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

CASES                                                                          PAGE

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 9

*Cerbone v. Int'l Ladies' Garment Workers' Union*,
768 F.2d 45, 48-49 (2d Cir. 1985) ................................................ 4, 15, 17

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42, 47 (2d Cir.1991) ................................................................ 15

*Early v. Banker's Life & Cas. Co.*,
959 F.2d 75 at 80-81 (7th Cir. 1992) ......................................... 5, 17, 18

*Global Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150, 154 (2d Cir.2006) ............................................................ 16

*Graziano v. Pataki*,
689 F.3d 110, 114 (2d Cir. 2012 ............................................................. 8

*Groff v. DeJoy*, __ U.S. __,
2023 U.S. LEXIS 2790 at *31-*32 (Jun. 29, 2023) ......................... 3, 4, 13, 14

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69, 72 (2d Cir.1995) ................................................................. 15

*Johnson v. Al Tech Specialties Steel Corp.*,
731 F.2d 143, 146 (2d Cir. 1984) ................................................ 5, 15, 17

*Maryland v. Louisiana*,
451 U. S. 725, 746 (1981) ....................................................................... 8

*Med. Prof. for Informed Consent et al. v. Bassett,* Index No. 008575/2022,
(Onondaga Cty. Supreme Ct. Jan. 13, 2023 .................................. 2, 6, 8, 11

*Norton v. Shelby County*,
118 U.S. 425, 442 (1886) .................................................................. 9, 10

*We The Patriots USA, Inc. v. Hochul*,
No. 21-2179 (2d Cir. 2021) .................................................................. 6, 9

*Zipes v. Trans World Airlines*,
455 U.S. 385, 393 (1982)................................................................................ 5, 15

**CONSTITUTION**                                                              **PAGE**

U.S. Const. Art. VI, cl. 2 ............................................................................... 1, 8-9

**U.S. CODE**                                                                **PAGE**

Fed. R. Civ. P. 12(b)(6) ............................................................... 7, 10, 15, 18

42 U.S.C. § 2000e..........................................................1-5, 7-12, 15-16, 20, 21

42 U.S.C. § 2000e(j) ........................................................................................ 10

**N.Y. STATE LAW**                                                           **PAGE**

N.Y. Pub. Health. L.§ 2806(1)(a) (2021) ...........................................4-6, 14-15

## INTRODUCTION

This case is straight forward and quite simple, when the law is correctly applied. This action arises out of Plaintiffs' wrongful termination and Northwell's refusal to accommodate Plaintiffs' sincerely held religious beliefs despite its obligation to do so under federal law, and in particular, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

In August of 2021, Northwell instituted a mandatory COVID-19 vaccination policy, which *inter alia* required Plaintiffs to become "fully vaccinated" or else Northwell would terminate their employment. In response, Plaintiffs requested a reasonable accommodation to Northwell's mandatory vaccination policy based on their respective sincerely held religious beliefs. Under Title VII, Northwell is obligated to grant Plaintiffs' accommodation requests unless it can prove that doing so would impose upon it an undue hardship.

Relying on that singular exception to Title VII's requirement to reasonably accommodate the sincerely held religious beliefs of its employees, Northwell has moved to dismiss this action even though no facts support the existence of an undue hardship.

In opposing Northwell's motion, Plaintiffs identify four (4) key reasons as to why, as a matter of law, Northwell cannot prevail in asserting its undue hardship affirmative defense:

***First***, the Supremacy Clause of the U.S. Constitution requires the Court to strike down a state regulation, such as N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61

1

(2021) ("Section 2.61"), when the state regulation conflicts with a federal law such as Title VII. According to Northwell, an "undue hardship" exists because abiding by the requirements of Title VII simultaneously constitutes a violation of Section 2.61—but as the Supremacy Clause requires, Northwell must adhere to Title VII—*not* Section 2.61—because federal law reigns supreme over state regulations.

**Second**, even if there was not a conflict between Section 2.61 and Title VII, Section 2.61 may only be enforced if it is promulgated lawfully. To be lawful, Section 2.61 must be promulgated by a state official acting within the scope of his or her authority as set forth by the New York Legislature. In this case, New York's Public Health Commissioner, Howard Zucker, M.D. is the public official who promulgated Section 2.61. But in doing so, Commissioner Zucker exceeded the scope of authority with which he has been vested, and this has been determined as a matter of law.

Earlier this year, the Onondaga County Supreme Court determined that Commissioner Zucker exceeded the scope of his authority in promulgating Section 2.61. *See Medical Professionals for Informed Consent et al. v. Mary T. Bassett, et al.*, Index No. 008575/2022, Decision and Order Motion #1 and Motion #2, NYSCEF Doc. No. 87, at p. 12 (Onondaga Cty. Supreme Ct. Jan. 13, 2023). In striking down the Commissioner's regulation, the Onondaga County Supreme Court held, *inter alia*:

(1)     Article 28 of New York's Public Health Law did not give Dr. Zucker the authority to enact Section 2.61;

(2)      Section 2.61 is "arbitrary and capricious" because "the COVID-19 shots do not prevent transmission"; and

(3)     Section 2.61's definition of "fully vaccinated" is "no definition at all" and it "contains all the hallmarks of absurdity . . .".

*Id*. at p. 12-13.

    **Third**, even if Section 2.61 was not preempted by Title VII and Commissioner Zucker *did* have the authority to promulgate Section 2.61, Northwell's argument that violating Section 2.61 gives rise to an undue hardship is still unsuccessful because even had it violated the regulation, Northwell would not have been subjected to any penalties, pecuniary or otherwise. This is because Section 2.61 does not contain any enforcement provisions, and it does not impose any punishment on those who do not adhere to its "requirements".[1]

    **Fourth**, even assuming *arguendo* that (1) Section 2.61 did not conflict with Title VII, (2) that Section 2.61 was promulgated lawfully, and (3) Section 2.61 did contain enforcement provisions that could subject Northwell to repercussions for violating the regulation, Northwell *still* cannot successfully invoke an undue hardship affirmative defense triggering the dismissal of Plaintiffs' Title VII claims because an "undue hardship" exists only if granting the accommodation **would** result in "substantial increased costs in relation to the conduct of the particular business involved." *Groff v. DeJoy*, __ U.S. __, 2023 U.S. LEXIS 2790 at *31-*32 (Jun. 29, 2023). But Northwell itself concedes, even if Northwell violated Section 2.61, such a

---

[1] The word "requirements" is in quotations because an unconstitutional law cannot require anything of Northwell, nor can it prohibit Northwell from adhering to the provisions of Title VII. This argument is lodged exclusively to demonstrate that, even assuming *arguendo* that Section 2.61 did not conflict with Title VII *and* that Section 2.61 was promulgated lawfully, Northwell's reliance on Section 2.61 still fails to give rise to a situation in which granting Plaintiffs religious accommodations imposes upon it an "undue hardship".

violation does not guarantee Northwell would face "civil fines, penalties, and loss of licensure."

The Supreme Court's holding in *Groff* only excuses an employer from Title VII liability for failing to accommodate its religious employees if the employer can show that granting its employees an accommodation **would** impose upon it an undue hardship. In other words, the mere possibility that accommodating its employees *could* give rise to an undue hardship is not enough—yet that is expressly what Northwell claims here. In its own words, Northwell claims had it accommodated Plaintiffs, it "could have been subjected to civil fines, penalties, and loss of licensure" — at no time, however, does Northwell argue or provide any evidence that demonstrates had it accommodated Plaintiffs, it **would** have had an undue hardship imposed upon it.

Northwell also asks this Court to ignore the evidence submitted with the Complaint in which each respective Plaintiff testifies as to the EEOC's acts or omissions that prevented them from timely filing their Charges of Discrimination. Each respective Plaintiff not only pleads facts, but testifies under oath, as to the misrepresentations that lulled them into believing their Charge had been timely filed or the misrepresentations that otherwise prevented them from satisfying the exhaustion requirement. While ordinarily, a failure to exhaust is an affirmative defense that gives rise to the dismissal of Title VII actions, the Second Circuit has held that a Title VII plaintiff may survive a motion to dismiss and defeat a failure to exhaust affirmative defense "in appropriate circumstances", *see Cerbone v. Int'l*

*Ladies' Garment Workers' Union*, 768 F.2d 45, 48-49 (2d Cir. 1985); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984), and the United States Supreme Court has held that misrepresentations concerning the EEOC filing requirement is one such appropriate circumstance in which equitable relief is available. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982).

For the reasons set forth below, the Court should deny Northwell's Motion to Dismiss Plaintiffs' Title VII claims.[2]

## FACTUAL BACKGROUND

For nearly a year and during the deadliest months of the COVID-19 pandemic, Northwell did not require its employees to become vaccinated against COVID-19. (Complt. ¶ 30). It was not until August of 2021 that Northwell implemented a mandatory vaccination policy. (*Id.* ¶ 31-32). In carrying out its new policy, Northwell created a "Religious Exemption Request Form" and instructed its religious employees to submit their completed form by September 3, 2021. (*Id.* ¶ 37). But these forms were nothing but smoke and mirrors.

Northwell itself admitted that it refused to accept Religious Exemption Request Forms because "the New York State Department of Health has indicated, consistent with the Vaccinate Mandate, that we are unable to recognize any religious exemptions to the mandate for healthcare employees." (*Id.* ¶ 41). As we now know, this was a reference to Section 2.61—a "regulation" that was "promulgated" by the New York Public Health Commissioner, Howard Zucker, M.D. (*Id.* ¶ 50). While

---

[2] Each respective Plaintiff voluntarily dismisses his or her GINA Claims.

merely glancing at Section 2.61 was sufficient for even a non-legal mind to become aware of the regulation's abject unconstitutionality, Northwell relied upon Section 2.61 in hopes that the unlawful "regulation" would justify Northwell's insatiable desire to gut its workforce of any and all religious persons. Indeed, Northwell CEO, Northwell's CEO, Michael J. Dowling, even publicly touted, "Northwell did everything possible to make it difficult not to be vaccinated." (*Id.* ¶ 42).

Despite the uphill battle they faced, each respective Plaintiff submitted a religious accommodation request on the basis that they are Christians, and their faith compels that they observe pro-life principles. (*Id.* ¶ 46). Specifically, Plaintiffs sincerely believe abortion is a sin and as a result, Plaintiffs could not in good faith or conscience receive a medical product that they knew had been tested, produced, developed, or derived through the use of aborted fetal cell line tissues procured from aborted fetuses. (*Id.*)

At no time did Northwell contest the validity of Plaintiffs' respective asserted religious beliefs or the fact their religious beliefs were in fact, sincerely held; rather, Northwell refused to provide Plaintiffs with a reasonable religious accommodation on basis that doing so would impose upon Northwell an undue hardship. (*Id.* ¶ 48).

But binding authority of the Second Circuit establishes that Section 2.61 "does not bar an employer from providing an employee a reasonable accommodation." *We The Patriots USA, Inc. v. Hochul*, No. 21-2179 (2d Cir. 2021). (Complt. ¶ 51). Therefore, alleging that a violation of Section 2.61 constitutes an undue hardship is

meritless, and Northwell is required to prove an undue hardship exists for reasons other than the sole reason it alleges in order to prevail in dismissing this action.

Northwell does not dispute the fact that each respective Plaintiffs' asserted religious beliefs are indeed, religious in nature, nor does Northwell challenge the sincerity with which each respective Plaintiff holds his or her sincere religious beliefs. (Complt. ¶¶ 55-67). Northwell does not even argue that, as a pragmatic matter, it could not accommodate Plaintiffs without suffering an undue hardship, which is presumably due to the fact that Northwell *did* provide means by which unvaccinated employees such as Plaintiffs could continue to work, even during the deadliest months of the pandemic. (*Id.* ¶¶ 75-76). Despite this, Northwell refused to accommodate Plaintiffs and terminated their employment. (*Id.* ¶¶ 48-54).

Boiled down to its essence, Northwell must prove that granting Plaintiffs an accommodation would impose upon it an undue hardship, and the undue hardship cannot be predicated upon an alleged violation of Section 2.61 in order to evade liability for violating Title VII.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility is not a

probability standard. *Id*. While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth required by the motion to dismiss, *id*., the Court must accept all of the factual allegations in the operative complaint as true and draw all reasonable inferences in the Plaintiff's favor. *See Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

## **ARGUMENT**

### I.  NORTHWELL CANNOT SKIRT LIABILITY BASED ON THE "UNDUE HARDSHIP" AFFIRMATIVE DEFENSE.

#### A.  Section 2.61 is Preempted by Title VII.

The Supremacy Clause of the United States Constitution states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., Article VI, clause 2. In applying the Supremacy Clause, the United States Supreme Court has held that, whereas a federal law conflicts with a state law, the federal law will overtake, or "preempt", that state law:

> Consistent with that command, we have long recognized that **state laws that conflict with federal law are "without effect".**

*Maryland v. Louisiana*, 451 U. S. 725, 746 (1981) (emphasis added).

Applying this framework and the Preemption Doctrine to the facts of this case, only one of two things can be true: either (1) Section 2.61 did[3] not prohibit Northwell

---

[3] References to Section 2.61 are in the past tense as the regulation has been deemed unconstitutional. *See Medical Professionals for Informed Consent et al. v. Mary T. Bassett, et al.*, Index No. 008575/2022,

from reasonably accommodating Plaintiffs and therefore, Northwell's refusal to reasonably accommodate them violates Title VII; or (2) Section 2.61 did prohibit Northwell from reasonably accommodating Plaintiffs and therefore, the regulation is unconstitutional as a matter of law pursuant to the Supremacy Clause and Preemption Doctrine. And, to the extent Section 2.61 is preempted, the Court must ignore any reference to the state regulation because it "confers no rights, it imposes no duties; it affords no protections and creates no office; **it is . . . as inoperative as though it had never been passed**." *Norton v. Shelby County*, 118 U.S. 425, 442 (1886) (emphasis added).

## B. If Section 2.61 is Not Preempted, That Means Northwell is Not Prohibited from Accommodating Plaintiffs.

The Second Circuit made it unequivocally clear: Section 2.61 ***permits*** "employers to make other **<u>accommodations</u>** for individuals who choose not to be vaccinated based on their sincere religious beliefs." *See We the Patriots USA, Inc. et al.//Dr. A. et al., v. Hochul*, Nos. 21-2179, 21-2566 (2nd Cir. Oct. 29, 2021). Thus, granting Plaintiffs' request for a reasonable accommodation could not conceivably constitute a violation of Section 2.61. As stated above, if Section 2.61 did make it unlawful for Northwell to accommodate Plaintiffs sincerely held religious beliefs, then Section 2.61 would be preempted as it conflicts with federal law.

It is well-established that Title VII is a validly enacted federal law that "imposes an obligation on an employer 'to reasonably accommodate an employee's . .

---

Decision and Order Motion #1 and Motion #2, NYSCEF Doc. No. 87, at p. 12 (Onondaga Cty. Supreme Ct. Jan. 13, 2023).

. religious observance or practice' . . .", and Northwell concedes this. 42 U.S.C. § 2000e(j); *see also* Def.'s Mot. at 7. Thus, absent Congressional action repealing Title VII or a federal court issues an opinion that find Title VII unconstitutional, any New York State law or regulation prohibiting Northwell from reasonably accommodating Plaintiff is *de facto* unconstitutional.

Indeed, it is one of the oldest tenets of American jurisprudence that "[a]n unconstitutional act is not a law; it confers no rights, it imposes no duties; it affords no protections and creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 442 (1886). Accordingly, any reference to Section 2.61 raised in Northwell's motion to dismiss must be struck in its entirety and excluded from consideration in ruling on the pending Rule 12 motion.

## II.   EVEN IF SECTION 2.61 IS NOT PREEMPTED, IT MUST STILL HAVE BEEN ENACTED LAWFULLY.

Northwell's <u>entire</u> argument is predicated upon a finding that Section 2.61 prohibits it from accommodating Plaintiffs. As stated above, Section 2.61 is either preempted, or Northwell's understanding of Section 2.61 as a prohibition on granting Plaintiff's accommodation requests is erroneous. Nevertheless, even assuming *arguendo* Section 2.61 is not preempted, the outcome remains the same: Northwell cannot rely on Section 2.61 to avail itself of the undue hardship affirmative defense because Commissioner Zucker is not authorized to promulgate Section 2.61.

Prior to filing its motion, Section 2.61 was found to be unconstitutional as it was promulgated outside the Public Health Commissioner's lawful authority. *See*

*Medical Professionals for Informed Consent et al. v. Mary T. Bassett, et al.*, Index No. 008575/2022, Decision and Order Motion #1 and Motion #2, NYSCEF Doc. No. 87, at p. 12 (Onondaga Cty. Supreme Ct. Jan. 13, 2023). In reaching this conclusion, the New York Supreme Court found that Commissioner Zucker promulgated Section 2.61 outside the scope of his authority.

Specifically, the New York Supreme Court held that the New York Legislature did not vest him with authority, though Article 28 of the Public Health Law or otherwise, to promulgate Section 2.61. As a result, **Section 2.61 is "null, void, and of no effect."** *See Medical Professionals for Informed Consent et al. v. Mary T. Bassett, et al.*, Index No. 008575/2022, Decision and Order Motion #1 and Motion #2, NYSCEF Doc. No. 87, at p. 12 (Onondaga Cty. Supreme Ct. Jan. 13, 2023) (emphasis added).

## III. EVEN IF SECTION 2.61 WAS NOT PREEMPTED AND IT WAS LAWFULLY ENACTED, NORTHWELL STILL CANNOT RELY ON IT TO ESTABLISH AN UNDUE HARDSHIP.

As a preliminary matter, there is a grave difference between (1) requesting an "exemption" (e.g., a request to be free and clear of any obligations under the mandatory vaccination policy and continue working as if the policy never existed); and (2) requesting an "accommodation" (e.g., a request to use alternative COVID-19 mitigation protocols in lieu of vaccination while still remaining subject to the mandatory vaccination policy) is outcome determinative in this case.[4]

---

[4] Title VII imposes an obligation on Northwell to reasonably accommodate Plaintiff's sincerely held religious beliefs absent undue hardship; contrast that with Section 2.61, which prohibits Northwell from granting Plaintiff an exemption to Northwell's mandatory vaccination policy for religious reaosns.

According to Northwell, it could not adhere to Title VII and **accommodate** Plaintiffs because had Northwell **accommodated** them, Northwell *could* have been subjected to "civil fines, penalties, and loss of licensure" because unlawful vaccination **exemption** . . .". (Def.'s Mot at 19) (emphasis added). This is patently false for two reasons: first, accommodations are not exemptions, and second, Section 2.61 does not even give rise to "civil fines, penalties, and loss of licensure" even if Northwell granted Plaintiffs exemptions to its mandatory vaccination policy.

### A. Plaintiffs Requested a Reasonable Religious Accommodations *TO* Northwell's Mandatory Vaccination Policy, not Exemptions *FROM* Northwell's Policy.

Plaintiffs allege that they submitted religious accommodation requests on the basis that *inter alia* they are Christians, and their faith compels that they observe pro-life principles. (Complt. ¶ 47). Contrary to Northwell's assertion, Plaintiffs **did not** "admit [ ] that [they] were terminated as a result of their request for an unlawful vaccination exemption . . .". (Def.'s Mot at 19). Northwell tries to bury the fact that Section 2.61 itself, nor any other regulation or rule promulgated under Article 28 of the Public Health Law, prohibits Northwell from granting religious accommodations.

Just as it is objectively impossible as a matter of law for Section 2.61 to both survive preemption *and* prohibit Northwell from accommodating Plaintiffs sincerely held religious beliefs, it is equally as impossible as a matter of law for Section 2.61 to both prohibit Northwell from reasonably accommodating Plaintiffs *and* "subject Northwell to civil fines, penalties, and loss of licensure" for doing so. Despite its efforts, the law does not allow Northwell to "have its cake and eat it too."

12

**B.     A Plain Reading of Section 2.61 Reveals No Enforcement Provisions Exist and Even if the Regulation Were to Be Violated, A Violation Still Does Not Subject Any Offender to "Civil Fines, Penalties, [or the] Loss of Licensure"**

Section 2.61 does not contain the words "civil fine(s)", "penalty(ies)", "loss of licensure" or any variation thereof, even a *single* time. Instead, Northwell seeks to rely on N.Y. Pub. Health L. § 2806(1)(a) (2021) to argue violating Section 2.61 could give rise to pecuniary losses, which states in pertinent part:

> A hospital operating certificate may be revoked, suspended, limited or annulled by the commissioner on proof that: (a) the hospital has failed to comply with the provisions of this article or rules and regulations promulgated thereunder . . .".

(emphasis added). While Pub. Health L. § 2806(1)(a) does mention civil fines, penalties, and loss of licensure, these repercussions only apply to "rules and regulations promulgated [under Article 28 of the New York Health Law]" — and as stated above, it has been held as a matter of law that Section 2.61 was *not* enacted pursuant to Article 28; indeed, had Commissioner Zucker promulgated Section 2.61 as a regulation under Article 28, Section 2.61 would have been constitutional—not struck down as unconstitutional. Accordingly, because Section 2.61 was not a regulation promulgated under Article 28 of the New York Public Health Law, the provisions of Pub. Health L. § 2806(1)(a) that give rise to civil fines, penalties, and loss of licensure are inapplicable to any violation of Section 2.61.

## IV.    EVEN IF § 2806(1)(a) APPLIED TO SECTION 2.61, NORTHWELL FAILS TO SUFFICIENTLY ALLEGE AN "UNDUE HARDSHIP" EXISTS

In June, the United States Supreme Court defined an "undue hardship" in the religious accommodation context. *See Groff*, 2023 U.S. LEXIS 2790 at *31-*32. Under

13

the *Groff* standard, Northwell can only establish an "undue hardship" exists if it can prove that granting Plaintiffs' accommodation requests **would** result in "substantial increased costs in relation to the conduct of the particular business involved." *Id.* Notwithstanding the litany of pitfalls neither Section 2.61 nor Northwell are able to survive to get to this point in the analysis, even assuming *arguendo* (1) Section 2.61 was not preempted, (2) Section 2.61 was enacted pursuant to lawful authority; (3) Section 2.61 contained an enforcement provision; and (4) Pub. Health L. § 2806(1)(a)'s provisions providing for "civil fines, penalties, and loss of licensure" did apply to Section 2.61, Northwell *still* cannot establish an undue hardship, based on its own admission.

Specifically, Northwell claims that *at worst*, a violation of Section 2.61 **could** subject Northwell to civil fines, penalties, and loss of licensure." Def.'s Mot. at 2 (emphasis added). Yet *Groff* requires a showing that substantial pecuniary losses **would** occur; that is, in order to establish an undue hardship exists, Northwell must prove a substantial economic loss is the guaranteed result of granting Plaintiffs' accommodation requests. And while Plaintiffs do not dispute that losing its license constitutes a economic loss of sufficient magnitude to satisfy *Groff*, the United States Supreme Court has made clear: a mere possibility of a significant economic loss does not suffice—in order to be entitled to an "undue hardship" affirmative defense, the significant economic loss must be *guaranteed.*

14

For these reasons, the Court must find that Northwell is not entitled to an "undue hardship" affirmative defense and accordingly, its motion to dismiss based on the same must be denied.

## V. PLAINTIFFS' 300-DAY POST-TERMINATION PERIOD TO FILE A CHARGE WITH THE EEOC IS ENTITLED TO EQUITABLE TOLLING.

Northwell's next argument seeks dismissal on the basis of a failure to exhaust affirmative defense. But as the Second Circuit has held, equitable relief is available for Title VII Plaintiffs in appropriate circumstances, *see Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48-49 (2d Cir. 1985); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984). among which, as the United States Supreme Court has held, includes the EEOC filing requirement. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982).

### A. The Complaint and Declarations Attached Thereto Sufficiently Allege that the EEOC Lulled Plaintiffs into Believing They Timely Filed Their Charges

Plaintiffs not only plead facts sufficient to survive a Rule 12 motion, but Plaintiffs also went so far as to provide testimony, under oath, attesting to the veracity of the facts and details laid out below that form the basis as to why the 300-day statute of limitations to file a Charge should be tolled.

There is no dispute that "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)); *see* Fed. R. Civ. P. 10(c) ("A copy of any written instrument

which is an exhibit to a pleading is a part thereof for all purposes."). Thus, the declarations are certainly part of the Complaint and therefore, the Court is obligated to consider them and view the facts alleged in each respective declaration in the light most favorable to the Plaintiff. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir.2006).

Turning to those facts, each respective Plaintiff testifies that "[t]he only reason [their] Charge[s] [were] not timely filed is because of the acts and omissions of the EEOC." *See* Complt. <u>Exhibits 2-26</u> – Plaintiffs' Declarations. Each respective Plaintiff then goes on to describe these "acts and omissions" in great detail by testifying under oath, that:

1. Plaintiffs submitted all information relevant to their claims;

2. Plaintiffs could only submit online inquiries and they could not file charges;

3. The EEOC directed Plaintiffs to schedule intake interviews as the next step in the exhaustion process and then failed or refused to provide Plaintiffs any means by which they could schedule their intake interviews;

4. Plaintiffs contacted the EEOC numerous times via phone, email, fax, and writing after being advised to schedule intake interviews and each attempt was unsuccessful because the EEOC ignored them;

5. The EEOC's website did not provide a means for Plaintiffs to move their Charges forward, the EEOC public portal reflected a "submission" which Plaintiffs' construed as to be synonymous with a "filing", the automated phone system directed Plaintiffs to visit the website because the offices were closed and Plaintiffs could not go to the EEOC in-person to file a Charge; and the EEOC's employees or agents advised Plaintiffs had submitted everything necessary.

*Id.* As such, there can be no doubt that a standard so low as require nothing more than a mere "notice pleading" has certainly been satisfied by Plaintiffs' Complaint and the declarations attached thereto.

As mentioned above, the Second Circuit has already held that equitable considerations are available to plaintiffs in this District who seek to avoid dismissal based on failure to exhaust grounds. *See Cerbone*, 768 F.2d at 48-49; *Johnson*, 731 F.2d at 146. But Northwell ignores this binding precedent and instead, cites a slew of cases in which various courts have declined to grant the plaintiff equitable relief. But this is problematic because Northwell conflates whether equitable relief is available with the frequency in which it is afforded. Plaintiffs admit that it is not often facts give rise to equitable considerations; indeed, it is not often conduct as egregious as the conduct at issue here occurs. But Plaintiffs Court is deceived into conflating the availability of the doctrine's application and the mere fact that equitable estoppel has not been applied, *yet*. And while the Second Circuit has yet to grapple with the applicability of the doctrine in the context of untimely charges due to a plaintiff's reasonable reliance on the EEOC's misrepresentations, the Seventh Circuit has addressed this exact issue.

In *Early v. Banker's Life & Cas. Co.*, 959 F.2d 75 at 80-81 (7th Cir. 1992), the Seventh Circuit held that the plaintiff's reliance on the EEOC's misrepresentations that culminated in the untimely filing of his Charge equitably estopped the defendant from obtaining a dismissal on exhaustion grounds. Specifically, the Seventh Circuit

held that "[m]isleading conduct by the EEOC can be a basis for tolling the administrative statute of limitations." *Id.* at 81.

While in *Early*, the EEOC's statement that an intake form constituted a Charge caused the plaintiff to miss the 300-day period within which his Charge needed to be filed, the same logic should apply to misrepresentations made by EEOC that lead a claimant to reasonably believe an intake interview is required as a condition precedent to filing a Charge of Discrimination and thereafter, never enabling that same claimant to schedule his or her intake interview on one or more days remaining of the claimant's 300-day filing period.

Taken together, the evidence attached to the Complaint, the Rule 12 pleading standard, the Second Circuit's express holding that equitable considerations apply in appropriate circumstances, *Carbone*, 768 F.2d at 48-49, and the persuasive precedent set in *Early*, the Court should hold that the facts of *Early* constitute an "appropriate circumstance" under *Carbone*, and therefore, equitable tolling would apply to Plaintiffs' Charges filed after 300 days since being terminated had elapsed.

### B.   Equitable Tolling Should Extend to EEOC Misrepresentations That Cause a Plaintiff to Prematurely Request His or Her Right-to-Sue Letters.

The exhaustion of administrative remedies is a complex process that involves multiple hard deadlines and timelines—and the failure to act within a specified period of time or wait until a specific period of time elapses gives rise to a failure to exhaust affirmative defense. But as discussed above, when a claimant fails to act within a specified 300-day period because the EEOC misrepresented his or her

obligations, Courts afford those claimants-turned-Plaintiffs equitable relief due to the inexistence of any neglect attributable to him or her. There is no reason that this same logic should not apply to misrepresentations that, when relied upon, cause a claimant to prematurely request his or her right to sue letter.

In her declaration, Plaintiff Corley-Dubose testifies that the only reason she requested her right-to-sue letter is because the EEOC materially misrepresented the fact that while as a matter of fact, Plaintiff "could" request her right-to-sue letter, any reasonable person would construe the EEOC's statement advising that a claimant may request his or her right-to-sue letter as a statement that reasonably implies no harm will result in the event the Claimant actually proceeds in requesting his or her letter. The only reason a claimant files a good faith Charge with the EEOC is because he or she wants redress from workplace discrimination, whether real or perceived. Thus, if the events complained of in the Charge have not been resolved at the time a claimant discusses obtaining a right-to-sue letter, logic dictates that the claimant is asking about a right-to-sue letter, because he or she has the desire, to sue.

Thus, in advising a claimant that he or she "could" or "can" request her right-to-sue letter without also advising that if the claimant does so before 180 days have passed since the date on which the claimant filed his or her charge, the claimant will be barred from recovery because his or her pre-mature request for the right-to-sue letter constitutes a failure to exhaust, that undoubtedly constitutes a material omission of fact and misrepresentation, at a minimum. And while at present, equitable tolling only applies to the 300-day filing deadline, the same equitable

principles should apply under this circumstance because the end result is the same: whether, based on the EEOC's misrepresentations, a claimant files his charge after the 300-day period to file a charge, or whether a claimant requests a right-to-sue letter before the 180-day period the Charge must remain pending before the EEOC has expired, both claimants will be barred from recovery due to their failure to satisfy all pre-requisites of the exhaustion process.

### C.   Plaintiffs Adamowicz, Chan, Cronin, and Weiss Merely Need to Be Entitled to Right-to-Sue Letters; They Need Not Possess Them at the Time This Action is Filed

Northwell argues that Plaintiffs Adamowicz, Chan, Cronin, and Weiss' Title VII claim should be dismissed because they commenced this action prior to receiving their right-to-sue letters. (Def.'s Mot. at 13). But it is well-established that the exhaustion of administrative remedies pre-requisite becomes satisfied once a plaintiff is entitled to his or her right-to-sue letter; satisfaction of exhaustion is not contingent upon the date on which a plaintiff actually receives his or her letter.

Moreover, Plaintiffs Adamowicz, Chan, Cronin, and Weiss have received their right-to-sue letters, thereby curing for any potential harm or defect that could even arguably exist.

Accordingly, the Court must deny Defendants' motion to dismiss Plaintiffs Adamowicz, Chan, Cronin, and Weiss Title VII claims because exhaustion was satisfied as a matter of law on the passing of the 180th day since the date on which each respective Plaintiff filed his or her EEOC Charge. after their claims had been filed with the EEOC.

20

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs voluntarily dismiss their GINA claim, but ask that the Court deny Defendant's Motion to Dismiss Plaintiff's Title VII claim and further hold that Northwell fails to establish the existence of an undue hardship.


Dated: August 14, 2023

                                      Respectfully submitted,

By:    /s/ MICHAEL A. YODER
           Michael A, Yoder
           LAW OFFICE OF MICHAEL A. YODER, PLLC
           2300 Wilson Blvd., Suite 700
           Arlington, VA 22201
           Tel: (202) 595-4504
           michael@yoderesq.com

           *Attorney for Plaintiff*