UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ADAMOWICZ, ET. AL.

      Plaintiffs,

    -v-                                   **MEMORANDUM AND ORDER**
                                                          2:23-cv-01277-OEM-LGD

NORTHWELL HEALTH INC.,

      Defendant.
------------------------------------------------------------------------X

**ORELIA E. MERCHANT, United States District Judge:**

On February 16, 2023, Plaintiffs[1] commenced this action asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[2] Plaintiffs challenge a workplace Covid-19 vaccination policy implemented by their former employer, defendant Northwell Health Inc. ("Northwell Health" or "Defendant"). Now before the Court is Northwell Health's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons below, Northwell Health's motion to dismiss the complaint is **GRANTED.**

## BACKGROUND[3]

**A. Plaintiffs' Employment and Termination from Northwell Health**

Plaintiffs were healthcare workers who worked at various sites or facilities within the Northwell Health system until their termination. *See* Complaint ("Compl."), ECF 1, ¶¶ 4-28, 78,

---

[1] "Plaintiffs" refers to the 25 plaintiffs in this action: Gene Adamowicz, Mary Bebber, Lisa Burger, Patricia Chan, Kathleen Christy, Alison Corley-Dubose, Karen Cronin, Veronica DeLaRosa, Debra Diaz-Chambless, Teresa Duda, Christina Dunne, Heather Lau, Julie Liff, Debra Lomonaco, Brittany Luberda, Patricia Macdonald, Ashley Mackey, Heather Polizzi, Daniel Rawcliffe, Adriana Scalici, Olivia Stein, Catherine Stevens, Sharon Varughese, Megan Virga, and Melanie Weiss.
[2] While the original complaint also asserted claims arising under the Genetic Information Nondiscrimination Act ("GINA"), Plaintiffs voluntarily dismissed their GINA claims. *See* Pl. Opp., ECF 17 at 21.
[3] Unless otherwise indicated, the following facts are taken from the complaint and assumed to be true for purposes of deciding the pending motion to dismiss.

79. On August 18, 2021, nearly a year after the start of the Covid-19 pandemic, Northwell Health implemented a new Covid-19 vaccination policy (the "Policy") announcing that employees including Plaintiffs, were required to become fully vaccinated against Covid-19 in order to remain employed by Northwell Health. Compl. ¶¶ 33-36. The Policy stated that submitting negative Covid-19 tests could not replace the vaccination requirement. Compl. ¶ 36. Northwell Health created a "Religious Exemption Request Form" and instructed employees who sought a religious exemption to complete the form by September 3, 2021. Compl. ¶ 38.

Each of the Plaintiffs submitted a religious accommodation request stating that they sincerely hold religious beliefs that prevented them from complying with the Policy. Compl. ¶ 47; *see generally* Plaintiffs' Declarations ("Pls. Decls."), ECF 1.2-1.26 ("My sincerely held religious beliefs extend beyond the mere performance of abortions or receipt of an abortion; I sincerely believe that if I were to knowingly inject, ingest, or receive a product that I knew was created through the use of fetal cell line tissue, such action would impact my ability to ultimately go to Heaven. Because of this, I cannot comply with NHS' mandatory Covid-19 vaccination policy."). Northwell Health rejected each plaintiff's requested religious exemption. Compl. ¶¶ 40-41, 43.

Throughout September and October of 2021, each plaintiff was terminated by Northwell Health for failure to comply with the Policy. Compl. ¶ 79.

### B. Filling of Charge of Discrimination with the EEOC

According to the Complaint and the declarations attached thereto,[4] only two plaintiffs,

---

[4] Each plaintiff submitted a declaration in connection with the filing of the Complaint. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (allowing the Court to consider documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint). *See generally* Declaration ("Decl.") of Gene Adamowicz (Compl., Exhibit ("Ex.") 1) Decl. of Mary Bebber (Compl., Ex. 2); Decl. of Lisa Burger (Compl., Ex 3); Decl. of Patricia Chan (Compl., Ex. 4); Decl. of Kathleen Christy (Compl., Ex. 5); Decl. of Alison Corley-Dubose (Compl., Ex. 6); Decl. of Karen Cronin (Compl, Ex. 7); Decl. of Veronica De La Rosa (Compl, Ex. 8); Decl. of Debra Diaz-Chambless (Compl., Ex. 9); Decl. of Teresa Duda (Compl., Ex. 10); Decl. of Christina Dunne (Compl., Ex. 11); Decl. of Heather Lau (Compl., Ex. 12); Decl. of Julie Liff (Compl., Ex. 13); Decl. of Debra Lomonaco (Compl., Ex. 14); Decl. of Brittany Luberda (Compl., Ex. 15); Decl. of Patricia MacDonald (Compl., Ex. 16); Decl. of Ashley Mackey

Debra LoMonaco and Melanie Weiss,[5] successfully filed a formal charge of discrimination ("Charge") - but only plaintiff LoMonaco filed a formal Charge with the Equal Employment Opportunity Commission ("EEOC").[6] The remaining 23 plaintiffs (the "Untimely Plaintiffs") each declare that, for various reasons, they were "unable to formally file a charge despite believing [they] had done so." Declarations of Untimely Plaintiffs ("Untimely Pls. Decls."), ECF 1.2-1.14, 1.16-1.25.[7]

Fifteen plaintiffs declare nearly identical experiences in varying general terms that they contacted the EEOC in September or October of 2021; the EEOC did not communicate with them; the EEOC never permitted them to complete an intake interview ("Intake Interview") or file a Charge; and as a result, they were not able to file a Charge, despite believing they could, because the EEOC "lulled" them into that belief.[8] Specifically, each of these fifteen plaintiffs state in their declarations that "[h]ad the EEOC not lulled me into believing I was prohibited from filing a Charge of Discrimination, which the EEOC lulled me into believing through the

---

(Compl., Ex. 17); Decl. of Heather Polizzi (Compl., Ex. 18); Decl. of Daniel Rawcliffe (Compl., Ex. 19); Decl. of Adriana Scalici (Compl., Ex. 20); Decl. of Olivia Stein (Compl., Ex. 21); Decl. of Catherine Stevens (Compl, Ex. 22); Decl. of Sharon Varughese (Compl., Ex. 23); Decl. of Megan Virga (Compl., Ex. 24); Decl. of Melanie Weiss (Compl., Ex. 25), ECF 1.2-1.26.

[5] Weiss represents that she filed her claim with the NYSDHR (state agency), and she claims neither it nor the EEOC has issued a right-to-sue notice. Decl. of Melanie Weiss ("Weiss Decl."), ECF 1-26, ¶¶ 17, 20, 23.

[6] *See* Decl. of Debra Lomonaco ("LoMonaco Decl."), ECF 1-15, ¶ 14 ("I timely filed a Charge of Discrimination ("Charge") with the EEOC pursuant to 42 U.S.C. §§ 2000e–5(e)(1)"); Weiss Decl., ECF 1-26, ¶ 17 ("Pursuant to the EEOC's direction, I contacted the NYSDHR and formally filed a Charge of Discrimination on or about February 4, 2022.").

[7] These plaintiffs are Gene Adamowicz, Mary Bebber, Lisa Burger, Patricia Chan, Kathleen Christy, Alison Corley-Dubose, Karen Cronin, Veronica De La Rosa, Debra Diaz-Chambless, Teresa Duda, Christina Dunne, Heather Lau, Julie Liff, Brittany Luberda, Patricia MacDonald, Ashley Mackey, Heather Polizzi, Daniel Rawcliffe, Adriana Scalici, Olivia Stein, Catherine Stevens, Sharon Varughese, and Megan Virga.

[8] *See* ECF 1-2, ¶¶ 14-26 (Adamowicz); ECF 1-3, ¶¶ 14-27 (Bebber); ECF 1-6, ¶¶ 14-27 (Christy); ECF 1-8, ¶¶ 14-26 (Cronin); ECF 1-9, ¶¶ 14-26 (De La Rosa); ECF 1-10, ¶¶ 14-26 (Diaz Chambless); ECF 1-11, ¶¶ 14-27 (Duda); ECF 1-12, ¶¶ 14-26 (Dunne); ECF 1-14, ¶¶ 14-26 (Liff); ECF 1-16, ¶¶ 14-27 (Luberda); ECF 1-17, ¶¶ 14-26 (MacDonald); ECF 1-20, ¶¶ 14-26 (Rawcliffe); ECF 1-22, ¶¶ 18-30 (Stein); ECF 1-24, ¶¶ 14-26 (Varughese); and ECF 1-25, ¶¶ 14-26 (Virga).

misrepresentations made to me by the EEOC Investigator, I would have timely filed a Charge of Discrimination."[9]

The remaining plaintiffs' declarations contain similar but more specific allegations that plaintiffs failed to file their EEOC Charges because the EEOC delayed or refused to schedule an Intake Interview,[10] advised the Plaintiff to file with a state agency instead,[11] advised Plaintiffs not to file a Charge at all,[12] and provided a different initial contact date with the EEOC.[13] One plaintiff states that the investigator advised they would prepare their Charge but never did.[14]

### C. Procedural History

Plaintiffs filed the Complaint on February 16, 2023, and on July 31, 2023, Defendants filed a Motion to Dismiss. Defendant's Memorandum in Support of Motion to Dismiss ("Def. Memo"), ECF 16-1. Plaintiffs filed their opposition to Defendants' motion to dismiss on August 14, 2023,

---

[9] *Id.*

[10] "I sent voluminous e-mail correspondences to the EEOC to schedule my Intake Interview, which the EEOC advised was required as a pre-requisite to filing a formal Charge of Discrimination. For months, I sent repeated e-mails seeking an Intake Interview, but my efforts were to no avail. Based on the representations made to me by the EEOC, I was unable to formally file my Charge of Discrimination because of the issues in scheduling an Intake Interview." Decl. of Heather Lau ("Pl. Lau"), ECF 1-13, ¶¶ 16, 18. *See* Decl. of Patricia Chan, ECF 1-5, ¶¶ 14-27; Decl. Pl. Lau, ECF 1-13, ¶¶ 14-28.

[11] "More specifically, I contacted the EEOC and submitted all information relevant to my claim, yet for more than (2) months the EEOC was silent. Finally, in December 2021, the EEOC responded to my contact and advised that I file with the New York State Division of Human Rights ("NYSDHR"), as doing so "would be quicker…Pursuant to the EEOC's direction, I contacted the NYSDHR and formally filed a Charge of Discrimination on or about February 4, 2022. Specifically, the EEOC Investigator advised that the NYSDHR "would be quicker" however, it has been more than eleven (11) months since filing my Charge with the NYSDHR and to date, I still have not received my right-to-sue letter." Decl. of Melanie Weiss ("Pl. Weiss"), ECF 1-26, ¶¶ 16-17, 20. *See* Decl. Pl. Weiss, ECF 1-26, ¶¶ 14-26.

[12] "After numerous attempts to schedule intake interview, I was finally granted an interview; however, during this interview the EEOC Investigator advised that I should not file a charge as doing so was likely to prevent me from getting my job back once the mandate had been vacated." Decl. of Ashley Mackey ("Pl. Mackey"), ECF 1-18, ¶ 17. "Specifically, rather than filing a charge of discrimination or providing me with the information necessary for me to file a charge of discrimination on my own, the EEOC advised (albeit incorrectly) that I had not been discriminated against and therefore I was prohibited from filing a charge of discrimination." Decl. of Adriana Scalici, ECF 1-21, ¶ 17. *See* Decl. Pl. Mackey, ECF 1-18, ¶¶ 14-19.

[13] "Specifically, the EEOC refused to timely schedule an Intake Interview within the 180 days of my termination despite contacting the EEOC well within 180 days of my date of termination, which was September 24, 2022." Decl. of Heather Polizzi ("Pl. Polizzi"), ECF 1-19, ¶ 19. *See* Decl. Pl. Polizzi, ECF 1-19, ¶¶ 14-27.

[14] "Specifically, on or about May 23, 2022, I was interviewed by Investigator Richard Buckley, who advised he would prepare my Charge. Mr. Buckley never prepared my Charge as promised, and had he done so, I would have had a Charge timely filed well before my timely deadline." *See* Decl. of Catherine Stevens, ECF 1-23, ¶ 20.

("Pl. Opp."), ECF 17, and Defendants filed a reply on September 18, 2023, ("Def. Reply"), ECF 19. On February 1, 2024, the Court held heard oral argument on the motion. *See* Docket, Minute Entry dated 2/1/2024.

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In considering this motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## DISCUSSION

Defendant raises the following arguments in support of dismissal: (1) Plaintiffs failed to exhaust their administrative remedies by timely filing a Charge with the EEOC and obtaining a right to sue letter; and (2) Plaintiffs fail to plausibly plead a *prima facie* claim in that they cannot establish they were qualified for their positions, nor can they plausibly plead Northwell Health discriminated against them based upon their religious beliefs. Plaintiffs contend that equitable tolling should apply to save their claims and that Defendant could have accommodated Plaintiffs without facing undue hardship.

5

### A. Plaintiffs' Failure to Exhaust Administrative Remedies

Plaintiff asserting Title VII claims must first exhaust their administrative remedies by filing a complaint with the EEOC or the equivalent state agency and obtaining a notice of right-to-sue letter before filing in federal court. *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006); 42 U.S.C. § 2000e-5(e)(1). Exhaustion of remedies is a precondition to suit rather than a jurisdictional requirement. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013*)* (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir.2000))*; Dimps v. Taconic Corr. Facility*, No. 17-cv-8806 (NSR), 2019 U.S. Dist. LEXIS 46452, at *6 (S.D.N.Y. Mar. 20, 2019). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)).

Charges of employment discrimination must also be timely filed with the relevant administrative agency within 300 days of an alleged unlawful practice. *See AMTRAK v. Morgan*, 536 U.S. 101, 109 (2002); *Williams,* 458 F.3d at 69 (stating that a Title VII claimant must make an EEOC filing within 300 days of the alleged discriminatory conduct). The EEOC is authorized to issue a right to sue notice letter if, after 180 days from the charge filing, it has not acted on the charge. *See* 42 U.S.C. § 2000e-5(f)(1). A plaintiff then has 90 days from receipt of a right-to-sue letter from the EEOC to file suit. *Id.*

In all cases, it is the defendant's burden to prove the plaintiff failed to exhaust her Title VII administrative remedies. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018)*; see also Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)

("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) … if the defense appears on the face of the complaint.") (internal quotation omitted).

Northwell Health asserts that all Plaintiffs, except for Plaintiff Lomanco, failed to file a timely Charge with the EEOC within the requisite time period. Def. Memo, ECF 16-1 at 7. Indeed, the Untimely Plaintiffs each declared as much.[15] Further, at oral argument, Plaintiffs' counsel conceded the same and argued that the issue before the Court was whether the Untimely Plaintiffs were eligible for equitable tolling. Transcript of Oral Argument dated 02/01/2024 ("Hr'g Tr."), 18:9-20.

The Supreme Court has previously held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) (holding that timing requirements applicable to Title VII suits against the federal government are similarly subject to equitable tolling); *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact and had reason to believe that the plaintiff would rely on it, and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995).

The Second Circuit has clarified that equitable tolling is a doctrine that is applied only where the person seeking its application has acted "with reasonable diligence." *Zerilli-Edelglass*

---

[15] Plaintiffs assert that "[t]he only reason [their] Charge[s] [were] not timely filed is because of the acts and omissions of the EEOC." *See generally* Pls. Decls., ECF 1.2-1.26. With regard to Plaintiff Weiss, she claimed she had not received her right to sue letter, and that "At all times relevant and based upon the intentional acts, omissions, and/or representations made to me by the EEOC, I reasonably believed that I had timely filed a Charge of Discrimination against NHS alleging discrimination and retaliation on the basis of my religion." Decl. Pl. Weiss, ECF 1-26, ¶¶ 20-24. Therefore, without a right to sue letter, plaintiff also failed to exhaust her administrative remedies fully.

7

*v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003), *as amended* (July 29, 2003) (more than 12 calls to EEOC did not invoke equitable tolling); *see also Perez v. Harbor Freight Tools*, 15-cv-05983 ADS SIL, 2016 WL 4734635, at *7 (E.D.N.Y. Sept. 9, 2016) ("many district courts in this Circuit have found that a non-employer's misleading conduct, such as a staff member at the EEOC, is insufficient to warrant equitable tolling"), *aff'd* 698 F. App'x 627 (2d Cir. 2017); *Carasco v. New York City Off-Track Betting Corp.,* 858 F. Supp. 28, 32 (S.D.N.Y. 1994) (rejecting tolling argument based on plaintiff's contention that on an unspecified date she telephoned EEOC and was misinformed about time period to file Charge), *aff'd,* 50 F.3d 3 (2d Cir. 1995).

Defendant argues that Plaintiffs' vague and conclusory allegations are insufficient to invoke the equitable tolling doctrine. Hr'g Tr. 24:8-12. The Court agrees. None of the 24 declarations contain sufficient factual matter demonstrating neither "definite misrepresentations of fact" made by the EEOC or its agents nor "reasonable reliance" in delaying the filing of their charges. *Syrkin v. State Univ. of N.Y.,* No. 04-CV-4336 (FB) (RML), 2005 U.S. Dist. LEXIS 21710, at *24 (E.D.N.Y. Sep. 29, 2005).[16] In fact, at oral argument, Plaintiffs' counsel admitted on the record that the declarations lacked specificity and that they were conclusory. *See* Hr'g Tr. 18:11-12 ("We're asking the Court as a matter of equity to toll the time in which they were permitted to file a charge and to obtain their right to sue letters based on the conclusory declarations…."). Similarly, there is no showing of "reasonable diligence" on the part of the Untimely Plaintiffs. At oral argument, when pressed on why the Untimely Plaintiffs were unable

---

[16] ("With respect to estoppel, Syrkin would have to show that '(1) the defendant made a definite misrepresentation of fact and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment.' *Buttry v. General Signal Corp*., 68 F.3d 1488, 1493 (2d Cir. 1995). Even assuming defendants' failure to raise the timeliness issue before the EEOC could constitute such a misrepresentation, *see Veltri v. Building Serv. 32B-J Pension Fund,* 393 F.3d 318, 326 (2d Cir. 2004) ("Silence may in some cases be sufficient to establish a misrepresentation."), Syrkin cannot establish that he reasonably relied on it to his detriment. By the time the EEOC proceedings began, the 300-day period had already expired; Syrkin cannot logically contend that, had the issue been raised before the EEOC, he could have somehow retroactively cured the defect.").

to file their Charge, counsel stated that the plaintiffs could not navigate the EEOC website.[17] Hr'g Tr. 13:3-8.

As described above, Plaintiffs' declarations contain repeated conclusory statements that the EEOC did not "permit" them to schedule an Intake Interview, did not "permit" them to file a Charge (or a timely Charge), failed to communicate with them, "lied" to them, and that something about the EEOC's "website, public portal, public phone system, and other statements and representations lulled [them] into believing that [they] timely filed a Charge." *See*, *e.g.*, ECF 1-2, ¶ 25. Untimely Plaintiffs do not describe actions taken or provide statements of any diligence on their part that would rise to equitable relief requested.[18] Because the Untimely Plaintiffs failed to file their EEOC charges in the allotted amount time and their circumstances demonstrate they are not warranted equitable tolling, the claims are all untimely.[19] Accordingly, plaintiffs' claims related to the untimely charges must be dismissed for plaintiffs' failure to fully exhaust and comport with the administrative remedies. *Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*, 585 F. Supp. 2d 491, 497 (S.D.N.Y. 2008).

---

[17] The Court is not bound nor moved by Plaintiffs reliance on *Early v. Banker's Life & Cas. Co.*, an out-of-circuit case. 959 F.2d 75, 80-81 (7th Cir. 1992). In *Early*, the Court addressed equitable tolling in the context of an ambiguous complaint. However, unlike Plaintiffs here, the *Early* plaintiff alleged a specific date and location when he had spoken to an EEOC officer, believing he had filed a charge on that date. *Id*. In the instant case, the Court finds the allegations made by Plaintiffs in their declarations, upon which they rely to allege not only their discrimination claim, but also their equitable relief for inability to timely file a charge, to be conclusory.

[18] This includes all plaintiffs except for Plaintiff Lomanco; while the plaintiff was able to file a charge with the EEOC, she made contradictory statements about whether or not she received her Notice-of-Right to sue before the complaint was filed. *See* ECF 1-15, ¶¶ 14, 17, 18. However, Plaintiff Lomanco's claim is still dismissed for failing to plead religious discrimination. *See infra* (B)(1).

[19] Defendants assert that this Court may consider the EEOC's records because Plaintiffs' declarations either directly reference or are predicated on their citing. Def. Memo, ECF 16-1 at 12. However, because the Plaintiffs concede they did not exhaust their administrative remedies by acknowledging in their declarations they did not file a timely EEOC Charge, the Court need not delve into the Defendant's additional arguments regarding the plaintiffs' inability to exhaust their administrative remedies. *See* ECF 1.2-1.26; *see also* Pl. Opp., ECF 17 at 16 ("each respective Plaintiff testifies that '[t]he only reason [their] Charge[s] [were] not timely filed is because of the acts and omissions of the EEOC.").

### B. Plaintiffs Fails to Plausibly Allege a Title VII Claim

Even if Plaintiffs had appropriately filed before the EEOC, Plaintiffs' Complaint fails to adequately plead a religious discrimination claim under Title VII, Title VII prohibits an employer from discriminating "against any individual . . . because of such individual's . . . religion [or] sex." 42 U.S.C. § 2000e-2(a)(1). For a Title VII discrimination claim to survive a motion to dismiss, a plaintiff must plausibly allege "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted); *see also Sumar v. Brooklyn Hosp. Ctr.*, No. 22-CV-7390 (RPK) (MMH), 2023 U.S. Dist. LEXIS 222004, at *5 (E.D.N.Y. Dec. 13, 2023). The burden then shifts to the employer to show that it could not reasonably accommodate plaintiff without undue hardship on the conduct of the employer's business. *See* 42 U.S.C. § 2000e(j); *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 63 (1986).

An employer does not violate Title VII, however, if it can show that the prospective accommodation "would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). Undue hardship is "shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468, 143 S. Ct. 2279, 216 L. Ed. 2d 1041 (2023); *accord D'Cunha v. Northwell Health Sys.*, No. 23-476-cv, 2023 U.S. App. LEXIS 30612, at *6-7 (2d Cir. Nov. 17, 2023).

#### 1. Plaintiffs Fail to Plead Sufficient Religious Discrimination

Plaintiffs fail to adequately plead a religious discrimination claim because they fail to plead an inference of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). That is, they did not plead facts that indicate that Northwell Health discriminated against them because of their religion.

10

The Second Circuit has held that at the pleading stage of an employment discrimination case a plaintiff has a "*minimal* burden" of alleging facts "suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Therefore, the facts alleged in the complaint must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in degrading terms relating to their religion, or its invidious comments about others in the employee's protected group. *Id.*

Plaintiffs fail to demonstrate any such discriminatory intent at the pleading stage. The Complaint alleges that "Northwell'[s] refus[al] to provide Plaintiffs with a reasonable religious accommodation on the basis that doing so would impose upon Northwell an undue hardship." Compl. ¶ 49. Such a conclusory statement shows nothing about Northwell's purportedly discriminatory intent but only that a refusal was predicated on an undue burden. In fact, the Complaint itself acknowledges that Northwell Health "did not contest the validity of [Plaintiffs'] religious beliefs." *See* Compl. ¶ 51 ("Northwell relied upon Title 10 N.Y. Comp. Codes R. & Regs. ¶ 2.61," which "made it unlawful for Northwell to exempt its employees from being vaccinated against Covid-19 on the basis of their religion."). Further, the 26 individual declarations are devoid of any factual allegations that any Plaintiff experienced religious discrimination by Northwell. None show Northwell engaging in degrading conduct based the Plaintiff's religion. Equally, none contain any allegation of invidious comments made by Northwell about other religious employees. Thus, the failure to allege any facts as to even an inference of discrimination dooms Plaintiffs' claims.

## 2. Undue Hardship

Even if Plaintiffs had made out a *prima facie* case of religious discrimination, Northwell Health has argued that accommodating the Covid-19 vaccine exemption would have imposed an "undue hardship" under the *Groff* standard. *Groff v. DeJoy*, 600 U.S., 2023 WL 4239256, *10 (2023). Defendants argue that the religious exemption requested by Plaintiffs would have created an undue hardship by forcing Defendant violate state law. Def. Memo at 20-22. However, Plaintiffs argue that *Groff* requires that Northwell Health must prove that a substantial economic loss is the guaranteed result of granting Plaintiffs' accommodation requests and that a mere possibility of a significant economic loss does not suffice to rise to the level of undue hardship. *See* Pl. Opp., ECF 17 at 14. The Court finds Plaintiffs' interpretation of *Groff* unavailing. In fact, the outcome of this argument is already foreclosed by the Second Circuit's recent decision in *D'Cunha v. Northwell Health Sys.*, a case brought against Northwell Health that was dismissed on nearly identical facts. 2023 U.S. App. LEXIS 30612, at *5-6 (2d Cir. Nov. 17, 2023).

In *D'Cunha*, the plaintiff, a medical resident, was an employee of Northwell Health. Plaintiff sought a religious exemption from the Covid-19 vaccination requirement while continuing to provide direct patient care as a resident. *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *1-2. The district court initially found that: 1) plaintiff failed to plausibly allege sex discrimination under Title VII, and 2) Defendant established that its denial of the medical resident's religious exemption request did not violate Title VII since granting the exemption would have imposed an undue hardship. The court found that granting a religious exemption would have violated the New York vaccine mandate, exposing the employer to penalties and undue hardship. *Id.* at *3. The Second Circuit affirmed this decision concluding that the outcome of the case is consistent with the Supreme Court's clarification of the "undue hardship" standard in *Groff* because the burden placed on an employer from violating a state law, like the State Mandate in

12

this case, is both "excessive" and "unjustifiable." *Groff*, 600 U.S. at 469. As such, the district court correctly dismissed D'Cunha's claim of religious discrimination. *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *8.

Here, Plaintiffs were front-line health care workers.[20] Plaintiffs suggest that the accommodation sought was to continue to wear masks and receive weekly Covid-19 tests. However, the actual underlying accommodation Plaintiffs were seeking was a vaccine exemption that would allow Plaintiffs to continue to work their front-line medical worker jobs unvaccinated. *See* Compl. ¶¶ 56-60. Plaintiffs attempt to distinguish between "accommodation" and "exemption"[21] is unavailing. Notably, the form of accommodation Plaintiffs sought has already been addressed in *We the Patriots USA, Inc. v. Hochul*, in which the Second Circuit held that "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." 17 F.4th 266, 292 (2d Cir. 2021). *See* 10 N.Y.C.R.R. § 2.61(a)(2), (c) (requiring Northwell Health to "continuously require" employees be fully vaccinated against Covid-19 if they "engage in activities such that if they were infected with Covid-19, they could potentially expose other covered personnel, patients or residents to the disease.").

In *D'Cunha v. Northwell Health Sys.*, for example, the defendant informed the plaintiff that her reporting unvaccinated to a "worksite [providing] direct patient care" posed "an unacceptable health and safety threat to patients, co-workers, and visitors." No. 1:22-cv-0988 (MKV), 2023 U.S. Dist. LEXIS 33343, at *7-8 (S.D.N.Y. Feb. 28, 2023). Courts have held that this is "more than a de minimis cost." *See Baker v. Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006);

---

[20] Plaintiffs' declarations include their positions, including, but not limited to: Nurses, Practice Supervisor of Operation, Senior Surgery Physician Assistant, Physical Therapist. Pls. Decls., ECF 1.2-1.26.
[21] "Northwell sanitized any use of the term 'religious accommodation' as Northwell was fully aware that state and federal law require the provision of reasonable religious accommodations – not religious exemptions." Compl. ¶ 44.

13

*see also Does 1-2 v. Hochul*, Case No. 21-CV-5067, 2022 U.S. Dist. LEXIS 180025, 2022 WL 4637843 (E.D.N.Y. Sept. 30, 2022) (dismissing Title VII claim where "[d]efendants persuasively argue[d] that . . . exempting the plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the Covid-19 virus, which is obviously a significant hardship").

Applying the same analysis as *D'Cunha*, in the instant case, Plaintiffs worked as healthcare workers for Defendant, a healthcare entity. Further, the Second Circuit has instructed that vaccination is a proper "condition of employment in the healthcare field." *We The Patriots*, 17 F.4th at 294*; see also Kane v. de Blasio*, No. 21 CIV. 7863 (NRB), 623 F. Supp. 3d 339, 2022 U.S. Dist. LEXIS 154260, 2022 WL 3701183, at *14 (S.D.N.Y. Aug. 26, 2022) (collecting cases). The complaint alleges that "Northwell [on August 18, 2021] announced its employees would no longer have the option to submit negative test results each week, and all employees were required to become fully vaccinated against Covid-19 in order to remain employed by Northwell." Compl. ¶¶ 33-36. Thereafter, from August 18, 2021, forward, Plaintiffs did not receive a vaccine or an exemption. *See* Compl. ¶¶ 41, 85; *see generally* Pls. Decls., ECF 1.2-1.26. Accordingly, the complaint fails to allege that Plaintiffs were qualified for their position. *See Vega*, 801 F.3d at 83; *see* Compl. ¶¶ 86-87.

Therefore, the Court finds that the Defendant would have suffered an undue hardship if it accommodated Plaintiffs' religious Covid-19 vaccine exemption request because doing so would have required Defendant to violate the law. *See D'Cunha,* U.S. App. LEXIS 30612, at *6; *see also* N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61. 2023 (New York State Department of Health's State Mandate, issued on August 26, 2021, mandating that all "personnel" employed in "covered

14

entities," such as hospitals, be vaccinated by September 27, 2021.). Thus, Plaintiffs' religious discrimination claim is dismissed.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is **GRANTED**, and the Complaint is dismissed in its entirety.

**SO ORDERED.**

/s/
**ORELIA E. MERCHANT**
**United States District Judge**

Dated: Brooklyn, New York
       March 11, 2024

15